Isaac Esmay, Appellant, *v.* Truman B. Gorton *et al.*,
Appellees.

#### APPEAL FROM HENRY.

Where a bill in chancery is filed to enforce a specific performance, if the statute
of frauds is not pleaded, parol evidence is admissible to prove the contract.

In such a case the contract need not be on one piece of paper, nor entered into
at the same time. Several pieces of paper, containing the whole contract, may
be connected, to show the parties, property, consideration and terms.

If the contract is mutual, the signature of the party to be charged with the specific
performance is sufficient, without that of the other party.

The minds of the contracting parties must concur in a proposition made; it must
be accepted in terms. If there is any change or modification of the proposition,
it becomes a new one, and, until it is accepted, there is no agreement.

Where there is not a place of payment agreed on, the debtor must seek the
creditor at his domicil, or place of business, if he has one.

This is a bill in chancery, brought by Gorton and Negus,
complainants, against Esmay, defendant, to compel the specific
performance of a contract between said parties, for the sale of
several quarter sections of land in Henry county.

The bill charges that Esmay, who resided in the city of
Albany, in the State of New York, on the first day of May,
A. D. 1854, was seized, in fee, of ten quarter sections of land
in Henry county, and that, on or about that date, he agreed
to sell the same to complainants.

This agreement, on the part of Esmay, the bill charges, is
evidenced by certain written propositions addressed to com-
plainants through M. B. Osborn, his agent, and which written
propositions are referred to in the bill, and made part thereof.

The bill sets forth that complainants accepted the written
propositions of Esmay, made such acceptance known to him
and his agent, and made such payment and tender of pay-

ment for the lands, to Esmay's agent, Osborn, as the written proposals called for.

By the answer of the defendant, and by the testimony of M. B. Osborn, it appears that Esmay was the owner of the several quarter sections of land in Henry county, as alleged in the bill, and that, at that time, and long previous, Osborn was his agent in respect to said lands, for the purpose of paying taxes and effecting sales, though not authorized by power of attorney to make deeds. From his testimony it appears that the complainants, some six months anterior to the first of May, 1854, applied to the witness and agent, Osborn, to purchase three quarter sections, all of which defendant owned or had power to sell, as was then supposed. This application was, by Osborn, communicated by letter to defendant, and, while awaiting a reply, Osborn went to New York, and, at defendant's request, called on him, in the city of Albany, some time in the month of January, 1854. The defendant, at this interview with Osborn, instructed him to sell all his lands in Henry county at three dollars per acre. These terms of sale, Osborn, on his return to Rock Island, about the middle of February following, communicated to complainants, and requested them to examine said lands (the ten quarter sections in question), with a view to the purchase of the whole. At his request, the complainants did so, and, after such examination, offered to purchase the lands at three dollars per acre, one quarter down, and the balance in one, two, and three years. Osborn communicated this offer, by letter, to the defendant, some time previous to May, '54. The defendant, in his reply, by letter, to his agent, did not accept complainant's proposition in terms, but made a counter proposition, modified only by exacting from them to pay the taxes on the land, due 1st of December, 1853, and amounting, as afterward ascertained, to $62.79. This letter of defendant, addressed to the agent, Osborn, containing such modified proposition to complainants, was received by Osborn some time between the 1st and 9th days of May, 1854, and was by him immediately communicated to complainants, and the letter shown to them, that they might accept or reject the proposition therein contained. The complainants thereupon at once accepted the proposal of defendant, as contained in said letter, namely : Complainants to pay the last year's taxes on said land (being the taxes due 1st of December, 1853), $1,250 dollars down; balance, $3,600, in one, two, and three years, with six per cent. interest, complainants to give note, with mortgage on the land, to secure said sum of $3,600, and interest; and the papers all to bear date the 1st day of May, 1854. Defendant also, in said letter, inclosed a form of deed, which he was willing to give, the like

of which he agreed to forward to his said agent, properly made out, acknowledged and ready for record.

It also appears, from the testimony of Osborn, that the complainants, immediately after the defendant's terms of sale became known to them, paid to the agent, Osborn, the amount of the taxes referred to ($62.79), and took his receipt therefor as such agent, which receipt is referred to in the testimony of Osborn. The taxes on the land had been previously paid by Osborn, and the modified proposal of defendant was that they should be repaid back to him.

It further appears, from the deposition of Osborn, that complainants, in said month of May, tendered to Osborn, as agent of said defendant, $1,250, as and for a payment on said land, which Osborn declined, and that such tender was made before the agent received any intimation of defendant's intention to withdraw his proposition, and before he was apprised of defendant's refusal to perform his contract.

The record in this case shows that the complainants brought the sum of $1,250 dollars into court upon the filing of their bill, and that the same is now subject to its order.

The letter from Esmay to Osborn is as follows:

ALBANY, ———, 1854.

Mr. M. B. Osborn,

DEAR SIR: I have ten quarters, in all 1616 61–100 acres, at $3 per acre, which will be $4,850. Now, it is full three years since we talked about $3 per acre, and six months since they offered $3 for parts, and the interest would have amounted to $100 in the meantime, and the taxes have also come against it since; besides, they want one, two and three years, at six per cent., for three-fourths, instead of one and two years for two-thirds, which makes a difference of a considerable to me, and, therefore, I will make it as follows, viz.: They must pay you the last year's taxes which you have paid, about $60, and $1,250 down, balance of $3,600 in one, two, and three years, with six per cent. interest, and you can retain $50 for your commission, and send me $1,200 cash, and the mortgage and notes for the $3,600. This, I think, will be no more than fair, as you will see that the balance of interest is much against me. I suppose your commissions are about one per cent. This is what I have paid in Ohio and in Illinois. I have sold several pieces, but paid nothing, as I have bargained with the parties themselves. If this will answer, write me immediately, and I will send you the warranty deed, and let all the papers be dated May 1, 1854. I do not like to be too close, but I am convinced that the land will bring five dollars per acre within two years from this time. I will do my best to get Bulkley to sell his two quarters at same price.

Yours with respect,        ISAAC ESMAY.

P. S. If they wish, I will try and get Mr. Griffin to sell his also. But they must pay for mine the last year's taxes and $4,800 besides, $1,200 down, balance in one, two, and three years, six per cent. interest.       I. E.

And afterward, at the April term, 1856, of said court, the said cause came on to be heard, on bill, answer and proofs.

The said court, DRURY, Judge, thereupon, at the next term, ordered a decree to be made therein in favor of said complainants, and against said defendant, from which final decision and decree the said defendant prayed an appeal to the supreme court.

HOYNE, MILLER and LEWIS, for Appellant.

J. J. BEARDSLEY, for Appellees.

SCATES, C. J. The statute of frauds not being pleaded or set up in the answer, no question arises upon the admission of parol evidence, in establishing the contract. *Kinsie* v. *Penrose*, 2 Scam. R. 520; *Dyer* v. *Martin et al.*, 4 ibid. 146; *Tarleton* v. *Vietes*, 1 Gilm. R. 470; *Switzer et al.* v. *Skiles et al.*, 3 ibid. 529.

The purchase and the terms of sale are very distinctly proven. The defendants, in all things, as far as they could, have complied with the terms, by paying the taxes to Osborn, and tendering to him, for plaintiff, the first payment, amounting to $1,250; and this has been maintained by a deposit of the amount in court. 2 Bouvier L. Dict 5, 70 "Tender."

Taking the objections to this contract in detail, we find neither sufficient to prevent a specific enforcement of the agreement, as alleged. The contract need not be on one piece of paper, nor entered into at the same time by both parties. It will be sufficient to connect the several pieces of paper containing the whole of the contract, and which, when connected, show the parties, property, terms and consideration. *McConnell* v. *Brillhart*, 17 Ill. R. 354; 2 Parson Cont. 298; 15 Vermont R. 685; 3 Taunt. R. 169.

While the contract must be mutual, the current of authorities seem to settle the construction of the statute of frauds as only requiring the signature of the party to be charged; and the party so charged on bill for specific performance may not allege the want of the signature of the other contracting party. 2 Parson on Cont. 290–1, and notes.

But no question can arise in this case upon the want of writing or signature on the part of defendants, as plaintiff does not insist on the statute; for a parol contract for the sale of land was good at the common law, and, when accompanied by livery of seizin, was a good conveyance of estates lying in livery.

The minds of the contracting parties must meet upon the terms. Where a proposition is made on one side, it must be simply and fully accepted by the other. Where it is submitted in, and sent by letter, it must be accepted as sent, within the

Esmay *v.* Groton et al.

time named, if any, and answered as required. If the terms, time or other part be changed or modified, the case becomes a new proposition, and, until simply accepted, there is no agreement or mutual meeting of minds. This is abundantly established by authorities. *Carr* v. *Duval et al.*, 14 Pet. R. 77; 17 Ill. R. 354; 3 John. R. 534; 1 Paige R. 434; *Eliason et al.* v. *Henshaw*, 4 Wheat. R. 225 (4 Cond. R. 432); Chit. on Cont. 12; 2 Sim. and Stu. R. 194 (1 Eng. Ch. R. 195); 9 Barn. and Cress. R. 561 (17 Eng. C. L. R. 443); 4 Mees. and Welsby R. 155; 5 ibid. 535.

In the strictest sense, we think defendants have established their alleged contract. They first submitted a proposition, through plaintiff's agent, Osborn, which plaintiff modified, by requiring them to refund to Osborn the taxes advanced for plaintiff for the year past. This was simply accepted, and these taxes refunded within a reasonable time.

In reference to the cash in hand, we think the tender fully met the obligation of the parties. The proposition was to deliver a deed at once, on the conclusion of the purchase, and take back a mortgage to secure the remainder of the purchase money. Although the papers were to be dated the 1st of May, the cash payment was due on the delivery and exchange of deed, mortgage and notes. It was plaintiff's fault that this was not done by the 1st of May. The tender in advance of offer to deliver the deed, or refusal to proceed with the sale, was made within a reasonable time after the contract was concluded.

Again, objections are made to the form of deed sent to be executed, and to making payments due at Rock Island bank, instead of Albany, plaintiff's residence.

A form was submitted, with the proposition, as a suggestion of what would be appropriate and sufficient, rather than as part of the terms. In simply accepting the terms, we do not understand this precise form of deed was agreed to. The plaintiff's agent sent a form of deed and mortgage, payable at Rock Island, with the view of executing the *details* of the contract, and not as a new proposition or alteration of the old. So we understand the evidence. If plaintiff was not satisfied with the details proposed, he should have executed and sent a sufficient deed, such as he had suggested with his proposition, with instructions to deliver it when defendants would pay the cash, and deliver notes and mortgage, payable at Albany. This he has not done, but simply refused to proceed. We agree that, where no place of payment is agreed on, the debtor must seek the creditor at his domicil, or usual place of business, if he have either. See 5 Maine R. 192; *Bixby Exrs.* v. *Whitney.*

Lastly, objection is made that Osborn was to accept, for his commissions on his agency in the sale, the sum of fifty dollars, which he refuses to do.

This proposition to the agent was part of the same letter, containing the proposition to defendants, but was no part of the proposition itself.

These defendants had nothing to do with the settlement of the agent's services. If plaintiff really intended to make that settlement a part of the proposition, he has failed to so word it. He may not now attach it by construction.

*Decree affirmed.*