Turner vs. Baker.

---

## TURNER VS. BAKER.

1. EXCEPTIONS: *To the rejection of evidence.*
   Where, upon exceptions to the rejection of evidence, only the conclusions to be drawn from the evidence are stated, this court will presume in favor of the ruling of the court below.

2. CONTRACT: *Mutuality.*
   Where A proposes to teach a school if sixty pupils are subscribed and B subscribes two scholars, neither is bound unless the requisite number are subscribed, although A may have taught the school, and in fact have had more than sixty pupils.

3. EVIDENCE: *Parol inadmissible to vary writing.*
   Where a contract is reduced to writing it is the only evidence of the intention of the parties.

4. CONTRACT: *Entirety.*
   A contract to teach a school for ten months at a given rate per month, is entire, and no part of the consideration is payable, or can be recovered before the end of the term.

5. ——*Alteration.*
   If one of the parties to a contract attempts to vary or change its terms, the other is thereby released and an unintentional part performance, which is withdrawn as soon as discovered, will not imply an assent to the change.

6. ——*Signing of school subscription.*
   It is not necessary that both the parties to a school subscription should sign the articles. When it is signed by the one who subscribed the pupils it is binding on both.

APPEAL from *White* Circuit Court.

Hon. JOHN WHYTOCK, Circuit Judge.

*J. M. Moore* for appellant.

The exhibit of the contract shows no mutuality and over-rules the averment that plaintiff was bound. Newman's (Ky.) Pl. & Pr. 252 and cases cited. No consideration as to complainant, 2 Parson's Con. No value of services shown rendered at defendant's request.

Plaintiff changed the contract, without showing assent of defendant.

For these reasons the demurrer should have been sustained.

The court erred in refusing to admit the proposed evidence regarding plaintiff's conduct in taking possession of the school-house, etc., as it tended to show him unfit to discharge the duties of a teacher. There was an implied contract of fitness. Story on Con., sec. 737 ; Story on Bailments, 437.

The instructions for plaintiff were erroneous. The action was for value of services rendered. It should have been for preventing plaintiff from performing. 1 Par. on Con., 527 and note v.

They also justified the departure from the contract on the part of plaintiff; also erroneous in authorizing the jury to find a usage, of which there was no proof.

Defendant's instructions should have been given. 1 Parsons on Con., 399, 70 and 73. He did not authorize subscription to a ten months' school. Story Agency, 60 and 77. The contract was entire. *Davis* v. *Maxwell*, 12 Met., 286. *Reub* v. *Moor*, 19 John, 337. *Jackson* v. *Jones*, 22 Ark., 158. *Berry* v. *Diamond*, 19 Ark., 262.

No part was demandable till the end of the term. 2 Parsons on Con., 34; *Davis* v. *Maxwell, supra.*

The instruction for plaintiff misstates the rule of damages. *Walworth* v. *Pool*, 9 Ark., 394.

To illustrate the distinction in damages, between price of services rendered, and loss from being prevented from rendering them, see *Walworth* v. *Pool*, 9 Ark., 394; Shannon & Comstock, 21 Wendell, 457.

*Coody & McRea*, for appellee.

The whole matter presents a question of fact, which was submitted to a jury. The court will not reverse a verdict sustained by proof. Rose's Digest, p. 559, sec. 4, 5, 6; 26, Ark., 309; 25 Ark., 49.

A party electing to plead in a suit begun before a magistrate is bound by the rules of pleading *Bellows* v. *Cheek*, 20 Ark., 424; 6 Ark., 450.

Failure to answer, was confession. Code sec. 146. The complaint must stand, on general demurrer, if the facts would constitute cause of action by any manner of stating them. 2 Ark., 128; 18 Ark., 286; 11 Ark., 12; 6 Ark., 215.

The evidence was properly excluded. 1 Greenleaf, sec. 50, 51, 52; 7 Ark., 470; 8 Ark., 49.

Character is not involved in an issue upon contract. Greenleaf on Ev., secs. 54–56; 6 Cowen, 675. Isolated acts cannot be shown to affect character. Greenleaf on Ev., sec. 55; 11 John, 38; 7 Cowen, 613; 2 Nott & McCord, 511; 10 Cush., 183; 11 ib., 4241–5.

In support of instructions given for appellee. 5 Am. Repts., 51; *Justus* v. *Garvey*, 53 Ill., 401; 7 Am. Repts., 268; *Cooper* v. *McCrummin*, 33 Texas, 383; *Hopkins* v. *Upsher*, 20 Texas, 89; 24 Texas, 200; 43 Ill., 356; 4 N. H., 535. Appellant's instructions properly refused. Story's Agency, sec. 89; *Brook* v. *Perry*, 23 Ark., 32 and 289; 5 Ark., 672; 13 Ark., 125; 15 Ark., 543; 20 Ark., 293.

Not necessary for both parties to sign the contract. Evidence of usage as to school sessions was properly admitted to the jury.

Turner vs. Baker.

1 Greenleaf's Ev., sec. 292 ; 2 ib., sec. 251, and authorities cited ;
5 Ad. and El., 303, U. S.; 15 M. and W., 737.

HARRISON, J.:

The appellee sued the appellant before a justice of the peace,.
as one of the subscribers to the following agreement:

To a school of ten months, to be taught by B. P. Baker, at
the town of Searcy, commencing on the second Monday in Janu-
ary, 1871, we, the undersigned, do hereby subscribe the number
of pupils affixed to each of our names, at the following rates of
tuition, to-wit:

Spelling, Reading, Writing, Primary Grammar, Primary
   Arithmetic, Primary Geography, each or all per month.$3 00
Practical Grammar, Practical Arithmetic, Familiar Science,
   Advanced Geography, each or all per month............... 4 00
Rhetoric, Mental and Moral Science, Algebra, Geometry,
   Trigonometry, Latin, Greek, each or all per month...... 5 00
Music on Piano, per month..................................... 5 00

The appellant subscribed two pupils.

The plaintiff, upon the trial before the justice, recovered judg-
ment for seventy dollars, the amount claimed, and the defendant
appealed to the Circuit Court, where, upon a trial anew, the
plaintiff again recovered the same sum.

It was proven that the plaintiff, having leased a house—the
Female Academy—for the purpose, taught the school in accord-
ance with the terms of the agreement, dividing the term, how-
ever, into two sessions of five months each—the first of which,
commenced on the second Monday, the 9th day of January, and
the second, on the first Monday, the 4th day of September, 1871.

That previous to the commencement of the school he pub-
lished the following circular :

Turner vs. Baker.

### SEARCY FEMALE INSTITUTE.

The spring session of this institution will open on Monday, the 9th day of January, 1871, and the Fall session on Monday, the 4th day of September, 1871. The course of study will be as extensive and varied as will be found in any institution of similar grade, and the Text Books the most improved in use. Faculty—B. P. Baker, Principal and Professor of Ancient Languages and Mathematics. Mrs. Fannie B. Thompson, Principal of Primary Department and Teacher of French. Mrs. Bettie M. Baker, Principal of the Department of Instrumental and Vocal Music.

Terms—Per session of five months:

First Department..................................................$15 00
Second Department............................................. 20 00
Third Department................. ..................................... 25 00

#### EXTRA.

French......... .................................................... 25 00
Music, Piano......... ............................................. 25 00
Use of Instrument................................................ 5 00

Incidental fee $1, in advance.

These terms will be required invariably, one-half in advance, the other half at the close of the session.

Pupils will be charged from time of entrance to close of session, except in cases of protracted sickness. Punctual attendance at the opening of the session is important to all concerned.

Board can be had in private families at from $14 to $15 per month. For further particulars, address

B. P. BAKER, Principal.

Searcy, Ark."

That the defendant did not sign the paper himself, or read, or even see it, but authorized the plaintiff's agent, seeking to make up the school, and having the same, to make the subscription for him, who at the time told the defendant that the plaintiff would teach the school if sixty pupils were subscribed. That no more than fifty-six pupils were ever subscribed, but that the plaintiff had more than sixty in his school. That at the commencement of the school, two of the defendant's children, in his absence from home, and without his knowledge or consent, entered as pupils, one in the primary, and one in the intermediate department, but, upon his return, were immediately withdrawn, and never, after the second day, again attended. For the two days they attended the defendant offered to pay the plaintiff according to the rate of tuition for the term, but he declined to accept the money. Some evidence of the customary length of a school term was given, which it is not necessary to state.

The defendant offered to prove, also, that previous to his engaging to send his children to the plaintiff's school, the plaintiff, whom the defendant had never seen, was represented to him by his agent, and by one or more interested in getting up the school, as a refined gentleman, a superior teacher, and an excellent disciplinarian, and entirely free from religious bigotry and sectarianism, and as liberal and courteous towards all religious denominations. That for more than twelve months next before the plaintiff commenced his school, the Baptist church in Searcy had, on the Sabbath days, been occupying the Female Academy (in which the school was taught) for preaching, prayer meeting, and teaching Sabbath-school, by common consent of the trustees, the entire community, and the teachers of the literary school, who preceded plaintiff, and without objection from any one. That they had no other house in which to worship or teach Sunday-school in the town, and there was no other suitable or comfortable house in the town that they could obtain. That a few

days before the plaintiff commenced his school he procured, from a member and officer of the church, the key to the academy, under the pretense of repairing the house for the opening of his school, giving no notice or intimation of an intention to exclude the church and its Sunday-school from the house. That the following Sabbath morning the Sunday-school, including ladies, gentlemen, youths and children, assembled as usual at the house to hold Sunday-school, and finding the doors locked, sent to the plaintiff for the key, not suspecting a refusal, as they nor any of them had received any notice of such intention on his part. That he rudely and contemptuously refused to send the key, and himself followed the messengers to the academy, and informed the school that if they wished to get their books out of the house they could have the key for that purpose, but could not teach Sunday-school therein. That a member and officer of the church and Sunday-school attempted gently to remonstrate with him, saying that he very much regretted the course he was pursuing; that they (the Baptists) had expected to unite on him and endeavor to build up a good school, but his course was not calculated to effect that object; that it was true the Baptists were in the minority, but still had some influence in the community. To which the plaintiff contemptuously replied that he did not regard their influence, and after other unprovoked, rude and offensive remarks, left, leaving the school to disperse and return to their homes; and that the plaintiff well knew at the time there was not another suitable or comfortable house in the town that could be obtained by the church for worship or Sunday-school, and that he never afterwards admitted them into the house, nor made any amends for his conduct. And that the defendant was a member and officer of the church, and superintendent of the Sunday-school; his wife also was a member of the church and teacher in the school, and his children pupils therein.

The refusal to admit this evidence formed one of the grounds of a motion for a new trial, and is assigned as an error of the court.

Whilst it is a clear proposition that whoever contracts for any particular employment or service impliedly warrants himself to be a fit person to discharge the duties thereof, and this fitness may require moral qualifications, as well as mental or physical, we can see nothing in the evidence excluded tending to show that the plaintiff did not possess all the requisites, moral, as well as intellectual, of a competent and proper teacher of youth. His refusal to allow the academy he had procured to teach in to be occupied for religious worship and Sabbath-school on Sundays, though, perhaps, under the circumstances, seemingly discourteous, may have been a measure of proper prudence to protect the interests of himself and pupils. He had the legal right to do so, and neither did the exercise of such right, though there might have been no obvious or apparent reason for it, nor the remark made by him, when told that the Baptists, though in the minority, still had some influence in the community, that he did not regard their influence, a remark not in the least derogatory to that highly respectable denomination of Christians, evince a character different from that he was represented to the plaintiff to possess (which representations were not, however, of the nature of a guarantee), or betoken such moral obliquity as would discharge the defendant from the performance, on his part, of the contract, if one existed between them. We are not informed what the other alleged offensive remarks were, or in what the rude and contemptuous conduct consisted, and are unable to understand what was intended to be proved, and as facts, and not conclusions which might be drawn from them, only were admissible in evidence, we must presume in favor of the ruling of the court below.

*Vol. xxx.—13.*

There was no error in the refusal to allow the defendant to make the proposed proof.

The court, at the request of the plaintiff, instructed the jury, if they found from the evidence that the defendant subscribed or authorized the subscription of two pupils to the school article circulated by the plaintiff for a ten months' school, to be taught in the town of Searcy, at the rates therein stated, commencing on the day therein named, and that the plaintiff did commence and teach the school for ten months, to find for the plaintiff the price of the tuition of the pupils subscribed in the departments they entered, although the school was divided into two sessions of five months each, and the defendant refused to send them, if they also found a usage of the country allowing such a division of the term into two sessions.

The court seems to have overlooked the fact that the plaintiff did not obligate himself to teach unless sixty pupils were subscribed, and that they were never subscribed. It was the understanding of both parties that the plaintiff did not agree and was not bound to teach unless sixty pupils were subscribed, or, in other words, his assent to the agreement depended upon that contingency. The plaintiff not being bound, the defendant was not, for the contract must be binding on both parties at the time when made, else one party would be without a valid and available consideration for his promise. And until the contingency happened upon which the plaintiff's assent depended, each had the right of revision, and it was the condition of the assent of the one as well as the other.

"A mere offer, not assented to, constitutes no contract, for there must be not only a proposal, but an acceptance thereof." Sto. on Con., sec. 378; 1 Par. on Con., 475; *McKinley* v. *Watkins*, 13 Ill., 140; *Esmay* v. *Groton*, 18 Ill., 483; *Tucker* v. *Woods*,

12 John, 190; *Brown* v. *Rice*, 29 Mo., 322; *Shupe* v. *Galbraith*, 32 Pa. 10; *Cook* v. *Oxley*, 3 Term R., 653; *Eskridge* v. *Glover*, 5 Stew. and Port, 264.

As the contingency upon which the assent of the parties depended never happened, there was no contract, and the plaintiff's teaching the school imposed no obligation upon the defendant to pay for the pupils he had subscribed.

In the case of *McKinley* v. *Watkins*, above cited, the plaintiff and defendant had some years before traded horses, afterwards a dispute arose between them about the trade, and the plaintiff threatened to sue unless the defendant would give him a horse— or the worth of the horse the plaintiff had got from the defendant—the horse which the plaintiff had received in exchange having died. The defendant promised that if the plaintiff would not sue he would give him fifty dollars, or a horse worth that sum. The action was brought to recover the fifty dollars. The court held that the promise of the defendant to pay the fifty dollars, if the plaintiff would not sue, not having been accepted, the plaintiff could not maintain the action.

In the case of *Cook* v. *Oxley*, 3 Term. R., 653, the defendant offered to sell the plaintiff two hundred and sixty hogsheads of tobacco, and gave him until four o'clock in the afternoon to determine whether he would buy them or not. The plaintiff notified the defendant before that hour that he would take them, but the defendant refused to deliver them. It was held that the defendant was not liable for not delivering the tobacco, for the plaintiff, not being bound by the original contract, there was no consideration to bind the defendant. Lord Kenyon, C. J., said: "Nothing can be clearer than that at the time of entering into this contract the engagement was all on one side, it was therefore *nudum pactum.*" Butler, J., said: "In order to sustain a promise there must be either a damage to the plaintiff or an

advantage to the defendant; here was neither, when the contract was first made. Then as to the subsequent time the promise can only be supported on the ground of a new contract made at four o'clock, but there is no pretense for that. It has been argued that this must be taken to be a complete sale from the time when the consideration was complied with, but it was not complied with, for it is not stated that the defendant did agree at four o'clock to the terms of the sale;" and Grove, J., said: "The agreement was not binding on the plaintiff before four o'clock, and it is not stated that the parties came to any subsequent agreement, there is therefore no consideration for the promise."

The instruction, assuming that the subscription was a complete contract between the parties was erroneous, and should not have been given.

The defendant asked seven instructions, the fourth and seventh the court gave, but refused the others. Those refused are as follows:

*First*—If at the time defendant authorized the plaintiff's agent to subscribe his name to the school subscription, he believed and had reason to believe that it was a subscription for a session of five months and did not know it was a subscription for ten months, then said agent was not authorized to subscribe his name for a ten months' school, and the defendant is not bound thereby; and, if it was the common custom of the community for schools to be taught for a term of five months only, and the defendant was not informed by plaintiff's agent, nor otherwise, that this was to be a school of ten months, you will find that the defendant did have reason to believe it was a school of five months, and gave no authority to said agent to subscribe his children for ten months.

*Second*—The contract is entire and not apportionable, no part of the compensation is demandable or payable until the end of

Turner vs. Baker.

the term for which plaintiff was to teach, and if, after making the contract, he changed the terms on which he would teach by requiring payment at different and earlier dates, or by adding new conditions, not expressed in the subscription, he cannot recover unless he has proven that the defendant assented to such change.

*Third*—If defendant's children went to plaintiff's school without his knowledge or consent, and defendant, on finding them there, immediately stopped them, this was no assent to the changed contract and did not bind the defendant.

*Fifth*—Unless at the time the defendant authorized the subscription of the two pupils, the duration of the school, or the price of tuition, or the time of payment was expressed, then it was an agreement on the defendant's part to send to only such school, and on such terms as to price and time of payment as was customary for schools taught in that community, and before plaintiff can recover he must prove that the terms, the price charged, and the time of payment, were according to the custom for such schools in the community.

*Sixth*—Unless both parties are bound by the contract sued on, neither is, and unless the plaintiff, as well as the defendant, signed it, the defendant is not bound.

There is no rule of law more familiar than that the terms of a written contract cannot be changed or varied by parol evidence.

The subscription itself is the only evidence of the intention of the parties, and, if otherwise valid as an agreement, the defendant was bound by it, notwithstanding he supposed such a school only was intended as was customary in the community.

The first and fifth of these instructions, which were substantially the same, did not therefore embody correct propositions of law and were properly refused.

The second and third we think were unobjectionable and should have been given. The defendant could not be bound by a contract to which he had not assented.

Whilst it is certainly true that unless both parties were bound neither was, it does not follow that to bind both each should have signed the article of subscription. The sixth was not therefore improperly refused.

The verdict was not sustained by the evidence. The proof shows that sixty pupils were never subscribed, and the contract never became complete, and the plaintiff had no cause of action against the defendant. The defendant should, as moved for by him, have had a new trial.

The judgment is therefore reversed, with instructions to grant the defendant a new trial.