CHARLES W. LASHER

*v.*

JEFFERSON GARDNER *et al.*

*Filed at Ottawa May 9, 1888.*

1. STATUTE OF FRAUDS—*of the character of writing required.* In certain enumerated cases the statute requires the contract, or some memorandum thereof, to be in writing, signed by the party to be charged, or if the contract is by an agent, his authority must be in writing, signed by the party to be charged; and the contract to be entered into by the agent, or some memorandum, must also be in writing and signed by him.

2. The statute does not require that the contract itself shall be reduced to writing. It is sufficient if there be a memorandum of the contract in writing, signed by the party to be charged, or by some one by him duly authorized.

3. No particular form of language is necessary to constitute the memorandum requisite to satisfy the requirements of the statute. An admission in writing of the bargain having been made, although it may not furnish exclusive evidence of the contract, as a final agreement would do, or an offer in writing so stating the proposal that its mere acceptance would fix the terms of the bargain, will, if accepted, satisfy the statute, and the acceptance of the offer in writing, may be shown by parol.

4. SAME—*of authority to an agent—whether in compliance with the statute.* The owner of certain real estate gave his agent a written authority to contract with the owner of a house for the even exchange of their properties, provided the house should be rented to the latter for a certain specified term of years at a specified annual rental, the rent to be properly secured, leaving the details of the contract to his agent. The agent of the owner of the house saw the holder of this power, and was anxious to close the bargain on the terms named in such power, but he declined to close the contract at that time, and before any contract was made his power was revoked: *Held,* that the written authority to make the exchange was not a contract or memorandum of a contract, within the meaning of the Statute of Frauds.

5. CONTRACT—*whether a contract or only a proposition.* A proposition by an owner of land, that if one negotiating for its purchase by an exchange of other property would make an offer including something in addition to a previous offer which had been made, he would consider the same, does not constitute a contract to sell, even if such further offer is made. By such proposition the owner making it reserves the right to accept, reject or postpone the consideration of such an offer, at his option.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. HOYNE & FOLLANSBEE, for the appellant:

The statute does not make a verbal contract void, in the sense that an illegal contract is, but simply makes it unenforcible, except upon the production of a writing containing the terms of the contract. Browne on Statute of Frauds, sec. 344.

The acceptance of an offer by an agent is good. *Telegraph Co.* v. *Railroad Co.* 86 Ill. 246.

The communication of the acceptance, to the agent of the person making the offer, is sufficient, even though the agent does not make it known to his principal. Waterman on Specific Per. sec. 138.

The memorandum is not the contract, but evidence of the fact of a verbal contract having been made. It need not state that the contract has been made, or afford any evidence of that fact. An offer or proposal signed by the party making it, is held to be a sufficient memorandum to support an action for a breach of contract afterward made by the verbal acceptance of the offer by him to whom it was made, the fact of such acceptance being provable by parol evidence. Browne on Statute of Frauds, sec. 345 a; *Esmay* v. *Gorton*, 18 Ill. 483.

No particular form of language is necessary in the memorandum. Any writing from which the intention can be gathered will be sufficient, from a deed down to mere hasty notes, or memoranda in books, papers or letters will suffice. *McConnell* v. *Brillhart*, 17 Ill. 354.

Where the owner wrote on a card, "Will take for the N.W. ¼," etc., "$300 per acre, one-third cash, balance one and two years, eight per cent," and signed it, and the purchaser, on the same card, wrote, "Your terms are accepted," and signed the same, it was held a sufficient memorandum in writing. *Cossitt* v. *Hobbs*, 56 Ill. 231.

Where the owner executed a deed, and sent it to his agent, and the purchaser went to the agent to close the transaction, but the agent refused to consummate the sale, the deed was held a sufficient memorandum in writing. *Wood* v. *Davis*, 82 Ill. 311.

Where the owner of land gave the purchaser a letter to the owner's agent, saying the purchaser had called on him and agreed to take the lot, stating the terms, and concluding, "Make the papers and I will pay your commissions," the court held this a sufficient memorandum. *Spangler* v. *Danforth*, 65 Ill. 152.

It has also been held that a paper stating the terms of a contract, and signed by the party to be charged, and addressed to a third person, though it did not, at the time, come to the knowledge of the other party, may be deemed a sufficient memorandum, under the statute. *Peabody* v. *Speyers*, 56 N. Y. 230.

Upon the point that the memorandum need not pass between the parties, but may be addressed to a third person, and that a note addressed by the principal to his agent is sufficient, see *Gibson* v. *Holland*, L. R. 1; 1 Benjamin on Sales, par. 231; *Kleeman* v. *Collins*, 9 Bush, (Ky.) 460; *Moore* v. *Mountcastle*, 61 Mo. 434.

Mr. HOWARD HENDERSON, for the appellees:

The authorization given by Gardner is not such a memorandum as the statute requires. Van Zandt was authorized to make a contract that would be binding, but he never did.

The statute not only requires the authority of the agent to be in writing, and signed by the party to be charged, but also that the agent shall sign the memorandum of the sale. *Albertson* v. *Ashton*, 102 Ill. 50; *Chappell* v. *McKnight*, 108 id. 570; *Farwell* v. *Lowther*, 18 id. 252.

A contract can not be partly in writing and partly in parol. *Farwell* v. *Lowther*, 18 Ill. 252; *Frazier* v. *Howe*, 106 id. 563.

Mr. Justice Shope delivered the opinion of the Court:

This was a bill by appellant, to compel specific performance of a contract alleged to have been entered into between appellee Jefferson Gardner, and appellant, for the exchange of certain real estate owned by them, severally, in the city of Chicago. At the filing of the bill, the south fifty feet of the Gardner tract had been conveyed to John D. Benedict and J. Wright Gardner, and they, with Jefferson Gardner, were made defendants. The defendants answered, admitting the ownership of Jefferson Gardner of the premises in question, but denied the making of the contract, and pleaded the Statute of Frauds. The conveyance to J. Wright Gardner and Benedict was admitted, and it was alleged they were purchasers in good faith and for value. On the hearing, decree was entered dismissing the bill, and the complainant prosecutes this appeal therefrom.

Two questions are presented: First, was there a contract of sale or agreement to convey, as alleged? And second, if so, is such contract within the Statute of Frauds? The determination of either of these questions adversely to appellant will be decisive against him, and no discussion of the *bona fides* of the sale to Benedict and J. Wright Gardner will be necessary.

The facts substantially conceded are: Jefferson Gardner, who resided at Lansingburg, New York, was the owner of certain acre property in Lake View, a suburb of Chicago, and appellant was the owner of residence property No. 345 La Salle avenue, Chicago. Mr. Knoble, a real estate dealer, representing appellant, called upon Mr. George Van Zandt, who had acted as the agent of Gardner, with a view to learning the price, etc., at which the Gardner property could be purchased. The price asked was $35,000. Appellant declined to purchase, but proposed an exchange of his house and lot for Gardner's land. This proposal, with the result of his examination of the property and a photograph of the house, Van Zandt sent

to his principal, who, as Van Zandt reported, did·not seem averse to considering the proposition. As part of appellant's proposal, he offered to take a lease of Gardner of the house for two years, at $3000 per annum. Van Zandt suggested that if appellant would make an offer of a five years lease, he thought the trade might be made. This appellant declined to do then. At this point in the negotiation, Van Zandt suggested that he was going east in a short time, and would see Mr. Gardner, and as he thought it a desirable trade, would endeavor to induce Mr. Gardner to make it. Van Zandt did go east, and saw Gardner, who, he says, seemed favorably disposed, but that his family were not. It was previously understood that if the trade could be made Van Zandt would telegraph Knoble, who would then go on, as the agent of Lasher, and close the trade. Van Zandt, finding the matter unfavorable, as he thought, telegraphed Knoble not to come, but Knoble went, notwithstanding, arriving at Lansingburg in the evening of August 11, and saw Van Zandt, who advised him of the situation, and to attempt nothing until morning. The next forenoon the two agents and Mr. Gardner met at the latter's house. It is clear, that while Mr. Gardner looked favorably upon the proposal to trade properties, he was not at all anxious, while his family, especially his wife, was hostile to it. Mr. Gardner was then eighty-five years old, and apparently very cautious in his business transactions. Knoble's offer, then made, was to trade properties even, Mr. Lasher taking a lease on the La Salle avenue property for three years, at $3000 per annum. Some time elapsed in conversation, mostly employed by Knoble in an endeavor to impress on Gardner's mind the advantage of trading his unproductive Lake View property for property yielding a large present income.

Up to this point there is little or no conflict in the testimony. Knoble testifies that Gardner and Van Zandt had a conference, and in a few minutes returned to the porch where Knoble was, when Gardner said: "Well, I rather favor the trade, but it's

not enough; if Mr. Lasher will pay $3000 a year for five years, I will make an even trade of the property;" that after endeavoring to get Gardner to agree to a less term, without effect, he said to Gardner: "If this is a positive offer from you to Mr. Lasher, I will go down to the telegraph office and telegraph Lasher;" that he did not wish to do so on uncertainty, and asked: · "Is this a positive proposition?" Gardner replied: "Yes, if Mr. Lasher will accept this proposition and secure the lease then—secure the lease, we will make the trade." These, Knoble says, "are his very words." Mr. Gardner's version of what occurred at that interview is, that he declined to accept Knoble's proposition to trade properties even, Mr. Lasher taking a lease of the La Salle avenue property, at a rental of $3000 per annum, for three years, but said to Knoble, if Mr. Lasher would consent to take a lease for five instead of three years, at a rental of $3000 per annum, and give good security for the rent, he would consider the offer. In this, Gardner is corroborated by Van Zandt and by the attending circumstances. If Knoble understood Gardner to make an offer, he did not telegraph it to Lasher immediately after this interview. His telegram to Lasher was:

"*To George W. Lasher & Son:*          "8,–12,–'86.

"If a five year lease at $3000 and even trade offered, probably will close trade. Lady against it. Tried best to get for less, but for her. Zandt here. Wire hurry."

This is entirely consistent with the testimony of Gardner and Van Zandt, but not with that of Knoble. No reasonable explanation is given why Knoble did not telegraph the fact that a positive proposition had been made for Lasher's acceptance. He knew that his principal was desirous of closing the transaction. The offer of Gardner, testified to by Knoble, required security for the rent. No apparent authority had been given Knoble to contract to give security, yet this important feature of the proposition is entirely omitted from the telegram.

It may be, as stated, that he was authorized to contract to secure the rent, but the authority exhibited to Gardner omitted all mention of it. It was as follows:

"CHICAGO, *August 10, 1886.*

"Mr. KNOBLE—*Dear Sir*—I hereby authorize you to trade my house, 345 La Salle avenue, Chicago, to Mr. Gardner, of Lansingburg, New York, on equal terms, for his property in Gardner's subdivision of Lake View, bounded by Clark, Wellington and Halsted streets, being three acres, more or less, and I will take a three years' lease of 345 La Salle avenue, at $3000 per year, payable semi-annually. G. W. LASHER."

Be that, however, as it may, it is clear that immediately after the interview at the house of Gardner, Knoble sent the telegram referred to, and for some reason a reply was not received by him for several hours. About two o'clock P. M., Knoble reporting that no answer had yet been received, Van Zandt went to Gardner's house, and the following instrument in writing was executed by Gardner, and delivered to Van Zandt:

"*Mr. George Van Zandt :* "LANSINGBURG, *August 12, 1886.*

"You are hereby authorized to contract with Mr. Lasher, of Chicago, for the even exchange of block 2 of Gardner & Knocke's subdivision, for his property, known as No. 345 La-Salle avenue, in Chicago, valued at $35,000, provided that the house is rented to Mr. Lasher for five years, at a rent of $3000 per year, and that the lease is properly secured, the other details of such contract to be left to your discretion. If the contract can not be made before January 1, 1887, this authority is revoked. JEFFERSON GARDNER."

About three o'clock Knoble received the following telegram:

"*To A. M. Knoble, care Phœnix Hotel :*

"Will take five year lease at $3000, if you can not do better. Close the trade for certain, at once. Answer.

G. W. LASHER."

Upon receiving this, Knoble started for Gardner's house, met Van Zandt, and told him he had received a dispatch from Lasher, and that it was all right. Van Zandt exhibited to Knoble his authority in writing from Gardner to make the trade. Knoble, instead of saying that Gardner's offer was accepted, or using equivalent language, insisted upon going to Gardner's house and completing the trade. He could, with the authority exhibited by Van Zandt, have notified him of the acceptance of Gardner's offer, if one had been made. This he did not do. Van Zandt and Knoble both understood that the contract of trade was not consummated, for Van Zandt then told Knoble that he must not see Gardner,—that he (Van-Zandt) had authority to act for Gardner, and would do so when they returned to Chicago; that nothing further could be done that day; that Gardner's wife and family were greatly opposed to the trade, and Mr. Gardner would not then act contrary to the wishes of his family, without at least first having an opportunity to talk it over with them, and if the matter was further pressed then, he would be met with a refusal. Knoble acquiesced in this, Van Zandt saying to him he would endeavor to procure the signature of Mrs. Gardner to the paper he held, which, from his influence with the family, he thought he could do.

The contention of appellant, that Gardner made a proposition to trade the property even, appellant taking a five years lease at $3000 per annum, properly secured, and that it was accepted by Lasher, by notifying Van Zandt, through Knoble, of its acceptance, is not sustained by the evidence. The preponderance of the evidence shows that Gardner's proposition was, that he would consider such an offer, if made by Lasher. This would reserve to himself the right to accept, reject or postpone the consideration thereof, at his option. It is equally clear that there was, at no time, an acceptance of any offer made by Knoble. The letter of attorney given by Gardner to Van Zandt, and shown Knoble, was a mere authority to act,

under which Van Zandt at no time exercised or attempted to exercise any power whatever.

It is not contended that the letter of attorney to Van Zandt was a contract entered into with Lasher, but it is said that it is a memorandum of the contract signed by the parties to be charged. The statute does not require that the contract itself shall be reduced to writing. It is sufficient if there be a memorandum of the contract in writing, signed by the party to be charged, or by some one by him duly authorized. (*Cossitt* v. *Hobbs*, 56 Ill. 231; *McConnell* v. *Brillhart*, 17 id. 354; *Spangler* v. *Danforth*, 65 id. 152; *Wood* v. *Davis*, 82 id. 311.) No particular form of language is necessary to constitute the memorandum requisite to satisfy the requirements of the statute. An admission in writing of the bargain having been made, although it may not furnish exclusive evidence of the contract as a final agreement would do, or an offer in writing so stating the proposal that its mere acceptance would fix the terms of the bargain, will, if accepted, satisfy the statute, and the acceptance of the offer in writing may be shown by parol. Browne on Statute of Frauds, sec. 345 a; *Esmay* v. *Gorton*, 18 Ill. 483, and authorities *supra; Farwell* v. *Lowther*, 18 id. 252.

The writing, on its face, does not purport to relate to a past transaction, and, in fact, as we have seen, there was no contract made, at the time of its execution, of which it could have been a memorandum. Gardner had made no proposition to trade on the basis mentioned, and Knoble had no authority to make or accept an offer to contract on that basis. It is apparent that it was not regarded by any of the parties as an offer or proposition by Gardner, and was not so treated by Knoble or Van Zandt. It was shown to Knoble, not as a proposal from Gardner, but as Van Zandt's authority to contract with Lasher for the exchange of property, and it was understood between them that he would not exercise that authority then, but upon their return to Chicago he would do so. The

evidence leaves no doubt that the consideration of the whole matter was postponed until Van Zandt and Knoble's return to Chicago. This being so, the minds of the parties never met, and no contract, as a matter of fact, existed between them. The whole matter was, as we have seen, left *in fieri* until the return to Chicago, and the revocation of Van Zandt's agency in the *interim* prevented its consummation.

It is, however, said, that it was agreed by Van Zandt, with Knoble, that upon their return to Chicago they would come to an understanding in regard to the details, which, by the letter of attorney, had been left to the discretion of Van Zandt, and enter into a contract for the exchange of the properties upon the terms by their principals severally proposed. If it be conceded that such contract was made, and was prevented of consummation by the revocation of Van Zandt's authority, it can not be enforced. The statute requires the contract, or some memorandum thereof, to be in writing, signed by the parties to be charged, or if the contract is by an agent, his authority must be in writing, signed by the party to be charged, and the contract entered into by the agent, or some memorandum thereof, must also be in writing, and signed by him. (*Albertson* v. *Ashton*, 102 Ill. 50; *Chappell* v. *McKnight*, 108 id. 570.) If, therefore, it be conceded that it was agreed by Van Zandt, as agent of Gardner, that on his return to Chicago he would contract with Lasher for the exchange of these properties upon the general terms mentioned, it can not avail appellant.

We are of opinion that the decree of the circuit court must be affirmed.

*Decree affirmed.*