## Thomas Cusack v. The Gunning System.

1.  CONTRACTS—*Place of Payment Where No Place is Designated.*—Where no place of payment is designated in a contract, a tender at the usual place of business of the creditor is sufficient.

2.  SAME—*Sunday is Dies Non in Legal Contemplation for the Performance of Any Act Under a Contract.*—Sunday is *dies non* in legal contemplation for the performance of any act under a contract, and a tender under a contract made on that day need not be received.

3.  LANDLORD AND TENANT—*Where Court of Equity Will Interpose in Tenant's Favor When He Has Failed to Keep a Condition.*—Where a lease contains a condition that the lessee shall have the privilege of renewal at the end of his time and he is prevented from availing himself of such right, a court of equity will interpose in his behalf where a literal performance has been prevented by unavoidable accident, fraud, surprise, or ignorance not willful, and upon compensation being made and no injury done to the lessor.

4.  SAME—*Nature of an Option to Remain for a Longer Period than the Term.*—When the tenant, by the terms of the lease, has an option to remain for a longer period, such additional term is not a new demise, but a continuation of the old one. If the lease does not provide that notice shall be given by the tenant of his election, merely remaining after his term has expired is sufficient, and binds him and the landlord for the additional term.

Bill for an Injunction.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed October 8, 1903.

Statement.—The court, June 13, 1902, rendered a decree in favor of appellee and against appellant, on a bill filed by the former against the latter, Winston & Co. and John C. Everett. The part of the decree finding the facts is, in substance, as follows:

"That the complainant is a corporation of the State of Illinois, and that on the 6th of October, 1900, the complainant was and had been engaged in the business of display advertising in the city of Chicago, Cook county, Illinois, and elsewhere; that in carrying on its business complainant leased or rented walls of buildings from the owners or persons in possession of such building for the purpose of painting advertising signs thereon; that on the 6th of October, 1900, the firm of Winston & Co. had possession and control of a building known as 636 North Clark street;

that the north wall of the building was suitable for display advertising; that the complainant paid Winston & Co. ten dollars for a written agreement in words and figures following, to wit:

'Wall Space.          The Gunning System,
                         Chicago, Ill.
                                        Chicago, Oct. 6, 1900.

In consideration of ten dollars ($10.00), receipt of which is hereby acknowledged, we hereby rent The Gunning System the north wall of building located 636 N. Clark St. for advertising purposes for a period of one (1) year from date, with the privilege of its renewing yearly on like terms. It being agreed that in case said space should become obstructed to view by building, this contract shall become void, and we agree to rebate rent paid *pro rata* for its unexpired time.

Accepted:                               Owner.
The Gunning System,                     Agent.
    Per (signed) F. W. Beaver,          Tenant.
                         (Signed) Winston & Co.'

That Beaver, who signed complainant's name, was superintendent of rents and leases and authorized to accept contracts on behalf of complainant; that on October 6th, 1900, after the execution of said contract, complainant painted a large and conspicuous sign on said wall, and continued to use said wall up to and until the 5th of October, 1901; that said last mentioned day fell on Saturday; that about 2 o'clock on the 5th day of October, 1901, complainant, by said Beaver, went to the office of Winston & Co. to secure renewal of said contract or agreement for one year; that the office of Winston & Co. was locked up; that complainant was unable at that time to pay or tender to Winston & Co. the said sum of money; that the 6th of October, 1901, fell on Sunday; that on the following day, October 7, 1901, said superintendent went to the office of Winston & Co. and tendered the sum of ten dollars and asked for a renewal of said contract; that said Winston & Co. informed complainant that they had leased said wall to Cusack, then and now doing business under the name of Thomas Cusack & Co., and that they could not renew said contract, and refused to accept said ten dollars, and complainant was unable to pay the same; that complainant has kept said tender good, and is willing and ready to pay said sum of ten dollars to Winston & Co., and offered the same in open court upon the hearing of this cause.

Court further finds that on October 1, 1901, said Thomas

Cusack was carrying on the same kind of business as complainant in the said city of Chicago, and that Cusack knew that complainant had rented and had an agreement for the use of the wall from Winston & Co., and that the sign on said wall was placed there by complainant, who was in as great possession of the said wall as the nature of the case admitted; that Cusack, by his representative, one Sullivan, applied to Winston & Co., without any notice to complainant, for an agreement for the use of said wall for advertising purposes, and offered Winston & Co. $25 for such use for one year; that said Winston & Co. informed Sullivan that they thought they had rented said wall to complainant; that they could not make any lease with Cusack until any existing lease had expired; that Sullivan was informed that they would give Cusack a receipt for $25 for rent of wall space to commence after the expiration of any existing lease; that Sullivan then paid Winston & Co. $25; that Winston & Co. executed and delivered a receipt to Sullivan for $25, which was as follows:

'Chicago, October 1, 1901.

Received of Thomas Cusack & Co. twenty-five dollars ($25.00) rent of wall space, 636 N. Clark St., for one year, to commence after expiration of any existing lease.

$25.00                    (Signed)   Winston & Co.'

The court further finds that Cusack made no inquiry as to complainant's interest or right in said wall, nor as to the terms of agreement or lease existing between Winston & Co. and complainant; that on October 5, 1901, while said contract was in full force between Winston & Co. complainant, and without any notice to complainant, Cusack sent certain painters and almost entirely obliterated the sign which complainant had on said wall, and commenced painting in a new sign on said wall, using nearly all of said wall for such purpose and finishing such new sign on October 7, 1901.

The court further finds that upon October 11, 1901, the complainant, believing under its tender it was entitled to the use of said wall, painted Cusack's sign out and painted in a new and different sign; that between the 11th of October, 1901, and the 23d of November, 1901, Cusack painted out the sign complainant had painted on the said wall on October 11th, replacing it with a different sign, and on November 23d, complainant painted out Cusack's sign and painted in another sign, and that between November 23, 1901, and December 24, 1901, Cusack painted out

complainant's sign and painted in a new sign, and on the 24th of December, 1901, complainant painted out Cusack's sign which he last painted on said wall and painted in a new and different sign, and between December 24, 1901, and January, 1902, Cusack painted out complainant's sign, and on the 7th of January, 1902, complainant painted out Cusack's sign and again painted a new sign, and that between the 7th of January, 1902, and the filing of the bill in this case Cusack painted out complainant's sign and painted in his own sign, which was maintained by Cusack on said wall at the time of the commencement of this suit.

The court further finds that on December 27th Thomas Cusack commenced an action or suit against the complainant before John C. Everett, a justice of the peace, to recover from said complainant the cost to said Cusack of repainting said wall three times; that said action or suit is still pending and undetermined before said justice of the peace."

The court further found that the reasonable cost and expense of appellee in replacing its signs on the wall was $172.38. The findings of fact by the court, in the decree, are sustained by the evidence. The evidence consisted of the testimony of witnesses and documents produced in open court. The court decreed that Winston & Co. should deliver to appellee a renewal of their contract with it for one year from October 5, 1901, on payment to them by appellee of $10, and that on their failure so to do, the master, in their behalf, should execute and deliver such renewal; that appellant, his agents, etc., should be enjoined from prosecuting said suit before said justice of the peace, and from in any manner interfering with appellee's use of said wall prior to October 7, 1902, and that appellant pay to appellee, within ten days, $172.38, in default of which execution to issue. The decree is in accordance with the prayer of the bill. Only Cusack appealed.

OSCAR E. LEINEN, attorney for appellant.

HENRY W. WOLSELEY, attorney for appellee.

When an option to renew is given in a lease the lessee has the right to one renewal equal in time to that of the

original lease.   Diffenderfer v. Board of Public Schools, 120 Mo. 447; Falley v. Giles, 29 Ind. 114.

Where no place of payment is designated a tender at the usual place of business of the creditor is sufficient.   Esmay v. Gorton, 18 Ill. 483.

A person can not by his absence, intentionally or unintentionally, avoid a tender.   Judd v. Ensign, 6 Barbour, 258.

When the day on which a payment should be made, or a contract performed, falls on Sunday, the payor or contractor has the following Monday to make the payment, or perform the contract.   Byers v. Rothschild, 11 Wash. 296; Boehm v. Rich, 13 Daly, 62; Sands v. Lyon, 18 Conn. 18; Avery v. Stewart, 2 Conn. 73; Salter v. Burt, 20 Wendell, 205; Hammond v. Am. Mut. Life Ins. Co., 10 Gray (Mass.), 306; Barrett v. Allen, 10 Ohio, 426.

Mr. Justice Adams delivered the opinion of the court.

The contentions of appellant's counsel are that appellee's rights under the contract between it and Winston & Co. expired at twelve o'clock midnight, October 6, 1901; that the contract was a mere license, revocable at any time, notwithstanding there was a valuable consideration for it; that it was revoked October 1, 1901, at which date Winston & Co. gave appellant a receipt for $25 for rent of the wall for one year, to commence after the expiration of any existing lease, and that, if not revoked at the last date, it was certainly revoked October 7, 1901, when Winston & Co., on request of appellee and tender of $10, refused to renew it.

Counsel for appellant devotes the greater part of his argument to a discussion of the proposition that appellee had a mere license, revocable at the will of Winston & Co., citing numerous cases.   We do not think it necessary to a decision of the case to consider whether the agreement was, or not, technically a license.   The substance of the matter is to be looked to.   The words of the agreement are:

" In consideration of ten dollars ($10.00), receipt of which is hereby acknowledged, we hereby rent The Gunning System the north wall of the building located 636 N. Clark street, for advertising purposes, for a period of one year

from date, with privilege of its renewal yearly on like terms. It being agreed that in case said space should become obstructed to view by building, this contract shall become void, and we agree to rebate rent paid *pro rata* for its unexpired term."

The contract is dated October 6, 1900, and is signed by The Gunning System and Winston & Co. This is a plain contract that, for the consideration of $10, appellee should have the right, for one year from October 6, 1900, to use the wall for advertising purposes, and should also have the privilege of the renewal of the contract yearly on like terms. The contract being a legal one, and for a valuable consideration, it was binding on the parties to it, and we can not conceive on what principle it could be rescinded or revoked by Winston & Co. without any fault on the part of appellee. A contract is to be understood in the sense in which the parties to it understood it, and it is clear from the language of the contract in question that the parties understood that it was to continue in force for one year, except on the contingency that the view of the wall should become obstructed by building. That such was the understanding is further evidenced by the receipt given by Winston & Co. to appellant, which is as follows:

"CHICAGO, October 1, 1901.

Received of Thomas Cusack & Co. twenty-five dollars, rent of wall space 636 N. Clark St., for one year, *to commence after expiration of any existing lease.*

WINSTON & Co."

This was a recognition of the fact that appellee's contract was still in force and not a revocation of it, as claimed by appellant's counsel.

In Van Ohlen v. Van Ohlen, 56 Ill. 528, the defendant, for a valuable consideration, agreed to keep open a ditch on his land. He violated the agreement and suit was brought for damages. It was contended that the agreement was a mere license, revocable at will, in respect to which the court say:

"Here there was a valuable consideration passing from the plaintiff to the defendant, for which the latter agreed

to perform a certain act, the effect of which would be a benefit to the plaintiff. The cases cited were mere licenses, without consideration, and, of course, revocable when not created by deed. The case at bar is not one of license," etc.

In Willoughby v. Lawrence, 116 Ill. 11, the right was granted, in writing, by the appellees to the appellants to use certain fences and buildings for advertising purposes. The court say:

"The right conferred upon appellants by the contract was more than a mere revocable license, as claimed by appellees, because Willoughby & Hill actually constructed the fence at an expense to themselves of $2,300, and fully executing their part of the agreement;" citing Washburn on Easements, pp. 29 and 30, and Van Ohlen v. Van Ohlen, 56 Ill. 528.

The court clearly placed the non-revocability of the contract on the ground that the appellants had expended money on the faith of it. There was no revocation of the license in the present case, but merely a refusal to renew the contract, for the reason hereinafter mentioned, and the main question is, whether appellee was equitably entitled to its renewal. The facts are as follows: The contract does not provide for any notice from appellee to Winston & Co. of the intention of appellee to avail of the privilege of renewal, nor does it appear from the evidence that Winston & Co., at any time, applied to appellee for information as to whether it would desire a renewal. Under these circumstances Winston & Co. were bound to take notice that appellee might apply for a renewal at any time before the expiration of the year for which the right was granted. The last day of that year was Sunday, October 6, 1901. October 5, 1901, about 2:15 o'clock P. M., appellee's superintendent went to the business office of Winston & Co. to pay $10, which he had with him, to that firm, and to procure a renewal of the contract, and found the office locked and no one there. The business office of Winston & Co. was the proper place to tender the money and apply for a renewal. Esmay v. Gorton, 18 Ill. 483, 487.

There is no evidence that appellee knew where either of the members of the firm of Winston & Co. resided, and he was not bound to search for their residences. The evidence of Beaver, appellee's superintendent, is that he had been doing business with that firm for quite a while, and always at the firm's office. Obivously it was not appellee's fault that the office of Winston & Co. was closed and the members of the firm absent. Sunday, the last day of the year, being *dies non*, in legal contemplation, for the performance of any act under a contract, appellee made no tender or application for renewal on that day, nor, if it had made such tender and application, would Winston & Co. have been bound to receive the same. Hammond v. Am., etc., Ins. Co., 10 Gray, 306.

Mr. Beaver testified that on Monday, October 7, 1901, he called at the office of Winston & Co. and there saw Mr. Odell, a member of the firm. His testimony as to what occurred is as follows :

"I told Mr. Odell I had come to renew our contract, and I offered him ten dollars. I held the ten dollars in my hand which I offered to give him, and he told me, he says, 'I am sorry, but I am afraid you are too late. I have rented that to the Thomas Cusack Company.' He says, 'I had forgotten there was a contract '—he didn't say forgot —he said, 'I had overlooked the point that you folks had the wall under lease.' He said he had looked through his files and he couldn't find a copy of the lease; and he told me that he didn't make a lease, but he took a receipt for $25 from Cusack & Company for the wall, and that it was subject to any existing lease, and for that reason he couldn't renew my contract."

As will hereafter be shown, appellee, by keeping advertisements posted on the wall, remained in such possession as the subject-matter was capable of, except when wrongfully interfered with by appellant. In Wood on Landlord and Tenant, pp. 676 and 677, the author says :

"Thus, if the covenant contains a provision that if the lessee shall pay the rent and not be in arrear in respect thereto at the end of the term, if the tenant is in arrear at the end of the term, at law, his right to a renewal or to

exercise an option to remain for another term is lost; but if the landlord, at the time when the rent falls due, is absent from the country or can not be found, and left no agent or person authorized to receive the rent for him, and the tenant shows that he was ready to pay the rent at the time, and avails himself of the earliest opportunity to do so upon the return of the landlord, a court of equity would protect his rights by compelling the landlord to execute a new lease or to continue the old one, upon the ground that the failure of the tenant to keep the condition was not willful, but was rendered unavoidable by the fault of the landlord himself, the rule in equity being that when the plaintiff can show that he has done everything in his power to perform, but by unavoidable accident, fraud, surprise, or ignorance not willful, he has been prevented from literally performing the condition, the court will interpose in his favor upon his making compensation for the breach, where justice requires that any compensation should be made; and, it should be added, where the case is one where the breach is such as admits of compensation."

In Taylor on Landlord and Tenant, 8th Ed., Sec. 339, the author, referring to equitable relief in such a case as the present, says:

" The court will only interfere beyond the stipulations of a covenant where a literal performance has been prevented by unavoidable accident, fraud, surprise, or ignorance not willful, and upon compensation being made and no injury to the lessor." See, also, 1 Pomeroy's Eq. Juris., 3d Ed., 451.

Winston & Co. are not here complaining of the decree. In the present case laches can not be attributed to appellee. It attempted and was prepared to make a tender and apply for a renewal in apt time, but was prevented from doing so by the place of business of Winston & Co. being closed, which, as previously stated, was not its fault.

Appellee was rightfully in such possession of the wall October 5, 1901, as the subject-matter was capable of. On that day it had a sign of one of its patrons on the wall. Sullivan, appellant's agent, who procured the contract for appellant under which he claims, testified that when he applied to Winston & Co. for a contract, he was informed by Mr. Odell, one of the firm, Mr. Winston being present,

Cusack v. The Gunning System.

that he would not give to him, Sullivan, such a contract as he asked for, because there might be an existing contract with the Gunning System.   Mr. Winston looked for a copy of that contract, but could not find it, or any record of it. Hence the words in the receipt given to appellant, namely, " To commence after any existing lease."   Appellant must be presumed to have known what Sullivan, his agent, knew, that there might be an existing lease to appellee. Appellant made no inquiry of appellee in respect to its right in the premises, but, October 5, 1901, before appellee's year had expired, painted over the sign placed by appellee on the wall, which in dimensions was twenty-five by thirty-four feet, and which appellant must have known was placed there by appellee.   In doing this he was clearly trespassing on appellee's right, and his subsequent painting over of signs placed on the wall by appellee, in the assertion of its right, were but continuations of the trespass.

Appellant was never rightfully in possession, and, as against appellant, appellee must be deemed to have remained in possession and to have been so October 7, 1901, when it actually tendered to Winston & Co. $10 and demanded a renewal.

" When the tenant, by the terms of the lease, has an option to remain for a longer period, such additional term is not a new demise, but a continuation of the old one.   If the lease does not provide that notice shall be given by the tenant of his election, merely remaining after his term has expired is sufficient, and binds both him and the landlord for the additional term."   Wood on Landlord and Tenant, p. 678, citing Delashman v. Berry, 20 Mich. 292; Clarke v. Merrill, 51 N. H. 415, and other cases which fully sustain the text.

The right claimed by appellant is expressed by the receipt of October 1, 1901, " to commence *after expiration of any existing lease.*"   These words include in their meaning not only appellee's right of enjoyment for the year specified in its contract, but also its right to a renewal at its option; so that if appellee, as between it and Winston & Co., is equitably entitled to a renewal, as we think it is, appellant must bide his time.

Appellee's counsel cites numerous cases to the effect that when an act is required to be performed by a certain day, as, for instance, the payment of a promissory note, without grace, and the last day is Sunday, payment may be made on the next Monday; but having some doubt of the relevancy of such cases to the present case, we are disinclined to place our decision on that ground.

For the reasons heretofore stated, the decree will be affirmed.