SAMUEL EBERT

*v.*

THEODORE ARENDS.

*Opinion filed April 18, 1901.*

1. EQUITY—*equity favors compensation and not forfeiture.* In equity the harsh remedy of forfeiture yields to the principle of compensation when fair dealing and good conscience seem to require it.

2. CONTRACTS—*if no place of payment is specified a parol agreement upon the same may be shown.* If no place for final payment is specified in a contract for the sale of land, it may be shown that a place of payment was agreed upon by parol.

3. SPECIFIC PERFORMANCE—*main question in specific performance.* The main question in specific performance is whether the complainant has made a conscientious effort on his part to comply honestly with the contract.

4. SAME—*when equity will enforce contract for sale of land.* Equity will enforce a contract for the sale of land at the suit of the proposed vendee although he has failed to make his payment at the stipulated time, where it appears that he was ready at such time to make the payment but by mistake or misunderstanding was not at the place where the vendor was waiting, and where it appears that there was an effort on the part of the vendor to evade the performance of the contract by keeping out of the vendee's way for several days after the time for payment, although he knew the vendee was looking for him with intention of closing contract.

5. SAME—*vendee not entitled to hold back part of the money if wife of vendor fails to join in deed.* If a contract for sale of land does not specify that the vendor's wife shall join in the deed the vendee must take the deed without execution thereof by the wife, if she refuses to join, and rely upon its covenants; but he is not entitled to hold back part of the purchase money until the value of the wife's inchoate right of dower has been ascertained, and it is error for a decree of specific performance in his favor to so provide.

APPEAL from the Circuit Court of Ford county; the Hon. JOHN H. MOFFETT, Judge, presiding.

This is a bill, filed on March 22, 1900, by the appellee against the appellant for the specific performance of a written contract for the sale of eighty acres of land in Ford county by the appellant to the appellee. Answer

was filed to the bill by the appellant, and the cause was referred to a special master to take evidence and report his conclusions. Objections were filed to the report before the master and by him overruled. The master reported in favor of the appellant, and recommended that appellee's bill should be dismissed. Exceptions were filed to the master's report, and, upon the coming in of the report to be heard upon such exceptions, the same were sustained by the circuit court; and the circuit court entered a decree in favor of the appellee, and ordered a specific performance of the contract by the appellant. From the latter decree by the circuit court the present appeal is prosecuted.

The contract or agreement was executed on September 25, 1899, between appellant as party of the first part, and appellee as party of the second part. Appellant lived at Roberts, and appellee lived at Melvin, the two places being about four or five miles distant from each other. By the terms of the contract it was provided that, if appellee should first make the payments and perform the covenants therein mentioned to be performed on his part, the appellant thereby covenanted and agreed to convey to appellee in fee simple clear of all encumbrances by a good and sufficient warranty deed the eighty acres in question, subject to a mortgage of $1500.00, which appellee assumed and agreed to pay; also subject to a lease for one year from March 1, 1900, to Henry Houtzell, which appellant agreed to assign to appellee, and appellee thereby covenanted and agreed to pay to appellant the sum of $4280.00 in manner following: $300.00 on the signing of the agreement, and $3980.00 on March 1, 1900, with interest at the rate of .... per centum per annum, payable annually on the whole sum remaining from time to time unpaid, and to pay all taxes and assessments that might be legally levied upon said land subsequent to the year 1899; and, in case of the failure of appellee to make either of the payments, or any part thereof, or

to perform any of the covenants on his part, it was provided that the contract should, at the option of appellant, be forfeited and determined, and appellee should forfeit all payments made by him on the contract, and such payments should be retained by appellant in full satisfaction and liquidation of all damages by him sustained; and he should have the, right to re-enter, and take possession of the premises; appellant was to pay interest on the above mortgage of $1500.00 up to March 1, 1900; and it was mutually agreed between the parties, "that the time of payment shall be the essence of this contract," and that all the covenants should be obligatory upon the heirs, executors, administrators and assigns of the respective parties. The contract was signed by the appellant, and by the appellee, Theodore Arends by George O. Arends. George O. Arends was the father of the appellee, Theodore Arends, and executed the contract as his agent.

The bill avers, that appellee was ready with his money in Melvin on March 1, 1900, but that appellant did not appear; that appellee inquired for Ebert on the 2d and 3d of March, but Ebert could not be found; that appellee has always been willing and ready to comply with his part of the contract, and understood that appellant was to come to Melvin on March 1, 1900, with the deed and lease; that on March 5, appellee was ready with the money, but Ebert refused to receive the same or deliver the deed and lease; that on March 16 appellee tendered Ebert $3980.00 and demanded the deed, but Ebert refused to accept the money or to deliver the deed; that Ebert did not pay the interest on said mortgage to March 1, and has not at any time tendered a deed, or assigned or delivered said lease, or forfeited the contract, but has treated the same as being in full force and effect.

The answer admits that the appellant received the $300.00, which was paid in cash, and avers "that the place agreed upon was the bank of Christopher Anderson in

Roberts in Ford county, and March 1, 1900, the time for performance;" that, during the whole of the day of March 1, 1900, appellant was in Roberts, ready to deliver to the appellee the deed and lease and perform his part of the agreement at said bank, but that appellee failed to appear or to offer to perform in any way on March 1; that on March 2, 1900, appellant was compelled to make other arrangements in regard to money matters, and elected to and did declare the contract forfeited. The answer admits that appellant refused to deliver the deed or lease or comply with the contract after March 2, 1900, because said contract had been terminated by the default of appellee, and by said forfeiture. The answer denies the tender as alleged in the bill.

CLOUD, MOFFETT & THOMPSON, for appellant:

The burden of proof is upon the complainant, in a bill for specific performance, to show performance on his part in every particular and that he himself is not in default. *Dupuy* v. *Williams*, 152 Ill. 105; *Short* v. *Kieffer*, 142 id. 266; *Brink* v. *Steadman*, 70 id. 241.

The complainant is required to make out a much more stronger case to support an application for specific performance than the defendant is required to show to resist it. *Short* v. *Kieffer*, 142 Ill. 266.

The elementary rule that before one party to a contract can call upon the other to perform he must show that he is not in default himself, applies with peculiar force and strictness in all bills for specific performance. *Short* v. *Kieffer*, 142 Ill. 266; *Scott* v. *Shepard*, 3 Gilm. 483; *Warren* v. *Richmond*, 53 Ill. 52; *Torrence* v. *Shedd*, 156 id. 217; *Brink* v. *Steadman*, 70 id. 241.

A purchaser of land has no right to apply to a court of chancery to compel a conveyance unless he has, previous to filing his bill, clothed himself with the right to demand a deed without any further thing being done on his part. *Short* v. *Kieffer*, 142 Ill. 266; *Bates* v. *Wheeler*, 1

Scam. 54; *Doyle* v. *Teas,* 4 id. 202; *Cronk* v. *Trumble,* 66 Ill. 432; *Stow* v. *Russell,* 36 id. 31; *Supervisors* v. *Henneberry,* 41 id. 179; *Walker* v. *Douglas,* 70 id. 445.

It is not sufficient in bills for specific performance to show the adverse party in default, but the party complaining must show that he is not liable to the same imputation. *Short* v. *Kieffer,* 142 Ill. 266; *Bates* v. *Wheeler,* 1 Scam. 54; *Doyle* v. *Teas,* 4 id. 202.

Where the parties by their own contract have made time the essence thereof, a court of chancery has no right to disregard it, but it is the duty of the court to give effect to such contract and not make a new one; and in such case it is the duty of the parties to perform at the time stipulated, or specific performance will not be decreed. *Stow* v. *Russell,* 36 Ill. 31; *Heckard* v. *Sayre,* 34 id. 149; *Smith* v. *Brown,* 5 Gilm. 314; *Kemp* v. *Humphreys,* 13 Ill. 573; *Brink* v. *Steadman,* 70 id. 241; *Phelps* v. *Railroad Co.* 63 id. 468; *Cunningham* v. *Railroad Co.* 77 id. 180; *Murphy* v. *Lockwood,* 21 id. 611.

A. L. PHILLIPS, for appellee:

The doctrine in equity is compensation—not forfeiture. *Andrews* v. *Sullivan,* 2 Gilm. 334; *Peck* v. *Brighton Co.* 69 Ill. 204; *Baker* v. *Bishop Hill Colony,* 45 id. 264; *Mix* v. *Beach,* 46 id. 311; *Watson* v. *White,* 152 id. 376.

Until the vendor avails himself of the clause of forfeiture the contract remains the same as if no such clause was in the contract. *Heckard* v. *Sayre,* 34 Ill. 146; *Mason* v. *Caldwell,* 5 Gilm. 196; *Heald* v. *Wright,* 75 Ill. 17; *Eaton* v. *Schneider;* 185 id. 509; *Chrisman* v. *Miller,* 21 id. 235.

When time, place and mode of payment are not of the essence of the contract by agreement expressly made or to be implied from the nature of the case, performance may be decreed in favor of the party in default in these respects. 5 Wait's Actions and Defenses, 808; *Crittenden* v. *Brewry,* 4 Wis. 205; *Morgan* v. *Scott,* 26 Pa. St. 51; *Knott* v. *Stephens,* 5 Ore. 235; *Bomier* v. *Caldwell,* 8 Mich. 463.

Every specific performance case depends largely upon its own circumstances, and whether the chancellor will or will not, in a given case, decree a specific performance of a contract is to a large extent a matter of discretion. *Allen* v. *Woodruff*, 96 Ill. 19; 15 Am. & Eng. Ency. of Law, (1st ed.) 645; *Watson* v. *White*, 152 Ill. 376.

The main question in a specific performance case is, has the complainant made a conscientious effort on his own part to comply honestly with the contract. *Kimball* v. *Tooke*, 70 Ill. 562; *Wallace* v. *McLaughlin*, 57 id. 58; *Monson* v. *Bragdon*, 159 id. 67; *Bishop* v. *Newton*, 20 id. 175.

Fraud, accident or mistake will excuse prompt performance by the complainant. *Heckard* v. *Sayre*, 34 Ill. 146; 5 Wait's Actions and Defenses, 808; *Stow* v. *Russell*, 36 Ill. 31; *Andrews* v. *Sullivan*, 2 Gilm. 334.

To entitle a purchaser to demand a deed and maintain a bill for specific performance it is sufficient that he is ready, eager and anxious and offers to pay any sum that may be found to be due and unpaid and to comply with the contract on his part. *Murphy* v. *Lockwood*, 21 Ill. 617; *Watson* v. *White*, 152 id. 376; *Monson* v. *Bragdon*, 159 id. 67.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Appellee, the vendee in the contract the specific performance of which is here sought to be enforced, paid $300.00 in cash upon September 25, 1899, the day of the execution of the contract. The next payment of $3980.00 with interest was to be made on March 1, 1900, but the contract does not name the place at which such payment was to be made. This controversy arises out of a disagreement between appellant and appellee, the parties to the contract, as to the place where the payment of $3980.00 was to be made. The appellant claims that the appellee was to pay him on March 1, 1900, at Roberts where he lived, while the appellee claims that the pay-

ment was to be made on that day at Melvin where appellee lived.

The proof shows that, on February 27 or 28, 1900, the appellee was ready and prepared to make the payment due on March 1, 1900, at Melvin. A day or two before March 1, 1900, appellee, who lived on a farm distant some three miles from Melvin, came into Melvin and left at the bank of Iehl & Co., bankers in that town, the sum of $3912.50 to make the payment in question. Appellant had agreed to pay the interest on the mortgage for $1500.00 up to March 1, 1900, but the interest was not due and payable by the terms of the mortgage until June 1, 1900. The sum of $3912.50 was arrived at by deducting from $3980.00 the interest up to March 1, which appellant, by the terms of the contract, was required to pay. There is no serious question about the correctness of the amount, which was deposited in the bank at Melvin for the payment of the money due on March 1. The evidence, however, tends to show that an arrangement was made with Iehl & Co. at Melvin, and a subsequent arrangement was also made with John P. Smith, a banker living at Roberts, to whom the money was subsequently transferred from Melvin, by which any amount necessary in excess of the $3912.50 should be advanced to make up the $3980.00 and interest.

The proof tends to show, that appellee looked for appellant and expected him to come from Roberts to Melvin on March 1 to receive the money, but appellant did not come. Upon March 2, 1900, between two and three o'clock in the afternoon, John Colteaux, at the request of George O. Arends, telephoned to Roberts to find out why appellant did not come to Melvin to receive the money. One Zahn, the partner and brother-in-law of appellant, answered through the telephone that appellant had gone out of town. The appellant did not come to Melvin on March 2. The money was in the bank of Iehl & Co. on that day, and ready for delivery to appellant, if he had

come. At eight o'clock on the morning of March 3, 1900,
which was Saturday, appellee and Iehl, the banker, went
with the money to Roberts, and went to the store of ap-
pellant in Roberts to close up the transaction. They
were there told by Zahn that appellant had gone into the
country, or to Paxton, and they waited until the last train
had passed Roberts, on which appellant could have ar-
rived on his return from Paxton, and, as he did not come
upon that train, appellee and Iehl then left for Melvin.
While appellee and Iehl were in Roberts, they left the
money at J. P. Smith's bank, and wrote a letter to ap-
pellant, telling him that they had been in Roberts on that
day, March 3, to close up the sale, and that, not finding
him, they had deposited the money with banker J. P.
Smith, the balance due, to-wit: $3912.50 to be paid upon
the delivery of the deed in accordance with the contract.
This written notice, which was thus mailed, was signed
by the appellee. On Monday, March 5, the appellee and
Iehl again went to Roberts for the purpose of paying the
money and receiving the deed, and they then found ap-
pellant there, but he refused to talk to them, and said
that they were too late. Iehl, in the presence of appel-
lee, demanded from appellant the deed, but he refused
to deliver it, saying: "I have been waiting here the 1st
and 2d of March, and it is altogether too late; you can
not have the land."

Appellant had returned to Roberts on the afternoon
of March 3 and on that day Smith went to his store and
said to him: "Arends has deposited the money with me,
and, as quick as you deliver the deed, you can draw the
money;" but appellant said that it was too late, and that
he could not do it. Subsequently, on March 16, 1900,
Smith, the banker, tendered to appellant at his store in
Roberts the full sum of $3980.00; but appellant refused
to receive the same, saying: "That ought to have been
done on the 1st or 2d, and it is now about the middle of
the month." Afterwards, on March 23, 1900, the money

was drawn from Smith's bank in Roberts, and put into the bank of Iehl & Co., in Melvin, where it still remains.

We are satisfied from the foregoing review, and from other circumstances developed by the evidence not here referred to, that appellee was ready and able and tried to pay the money at Melvin on March 1 and, when appellant refused to come to Melvin to receive the money, made an honest effort to pay it to him at Roberts on March 3 and 5. If appellee was in default, he was in default in not tendering payment of the money at Roberts, instead of making arrangements to pay it at Melvin. Undoubtedly, by the terms of the agreement time is made the essence of the contract, and the payment of the $3980.00 was required to be made on March 1. The question, then, arises whether the fact, that appellee was ready with the money and prepared to pay it at Melvin on March 1, entitles him to a specific performance of the agreement. Appellant claims that, upon the failure of appellee to make payment at Roberts on March 1, he forfeited the contract, and insists upon his right to retain the cash payment of $300.00 by reason of such forfeiture. The general rule is, that equity favors compensation, and not forfeiture. In equity the harsh remedy of forfeiture yields to the principle of compensation when fair dealing and good conscience seem to require it. (*Andrews* v. *Sullivan*, 2 Gilm. 327; *Peck* v. *Brighton Co.* 69 Ill. 200; *Mix* v. *Beach*, 46 id. 311; *Watson* v. *White*, 152 id. 364).

Appellant insists upon the rule announced by this court in *Esmay* v. *Gorton*, 18 Ill. 483, that, "where no place of payment is agreed on, the debtor must seek the creditor at his domicil, or usual place of business, if he have either." It is urged upon the part of appellant that, inasmuch as the contract specified no place of payment, it was the duty of appellee to seek appellant at his place of business in Roberts, and there offer to pay the money. The case of *Esmay* v. *Gorton, supra*, refers, in support of the rule there announced, to the case of *Bixby* v. *Whitney*,

5 Me. 192, where it is said: "It seems well settled that, where no place is appointed for the delivery of the specific articles, the obligor must go before the day of payment to the obligee and know what place he will appoint to receive them." Therefore, no place of payment being named, appellee had a right to go to appellant before the day of payment, and ascertain at what place he would receive the money, whether at Roberts or at Melvin. In cases where the place of payment is thus omitted in the written contract, it may be shown by testimony that a place of payment was agreed upon by parol between the parties. Indeed, the appellant in his answer in this case sets up that the place agreed upon was the bank of Christopher Anderson in Roberts. If such agreement was made, it must have been a verbal agreement as it is not embodied in the written contract.

When the contract of September 25, 1899, was entered into, four persons were present, to-wit: The appellant and George O. Arends, the father and agent of appellee, and Christopher Anderson, the banker, and John Colteaux above named. Colteaux was the agent of appellant, who negotiated the sale for him to appellee of the land in question. George O. Arends died before the testimony was taken in this case. Colteaux swears that, when the contract was made at Roberts in Christopher Anderson's bank on September 25, 1899, nothing was said about the place where the payment of the $3980.00 should be made. The appellee swears that, on February 1, 1900, he went to Roberts to see the appellant, in order to find out where he should pay the money, whether at Melvin or at Roberts; and that, at that time, he saw appellant, and asked him if he should bring the money to Roberts, or leave it with Mr. Iehl in the bank at Melvin; that appellant told him he could leave it at the bank in Melvin; that he asked appellant if he would bring the papers, that is the deed and lease, to Melvin, and appellant said that he would do so.

There is a conflict in. the evidence as to whether or not appellant did agree that he would bring the papers to Iehl's bank at Melvin, and there deliver them and receive the money.   There is much testimony tending to confirm the statement made by appellee as to this agreement.   The evidence is conclusive, including that of the appellant himself and of several of his witnesses, that some arrangement existed between appellant and George O. Arends, by which appellant could receive $1000.00 at any time before March 1, if he should go to Melvin to get it.   The chancellor, before whom this case was tried, in the decree rendered by him, found that there was a verbal agreement between appellant and appellee after the contract was signed, that the last payment was to be made, and the deed was to be delivered, at the bank of Iehl & Co. at Melvin.   We are not prepared to say that this finding of the court is not sustained by the weight of the evidence, and we decline to disturb it.

The testimony clearly shows that, if there was no verbal agreement between appellant and appellee for the payment of the money on March 1, in Melvin, yet appellee believed in good faith that appellant was to come to Melvin on that day to receive the money.   The evidence also tends to show, that appellant sought to avoid the delivery of the deed and lease to appellee and the acceptance of the money on March 1, 1900.   Although appellant's wife came to Anderson's bank on March 1, and there signed and acknowledged the deed, yet appellant himself never did sign or execute the deed to be delivered to appellee, nor is there any proof showing that any assignment of the lease was executed by appellant to appellee.   A telephone message came from appellee to appellant's store between two and three o'clock on March 2, asking why appellant did not come to Melvin to receive the money, and appellant's partner answered that appellant had gone out of town.   But appellant admits in his testimony, that he was in his store on the afternoon

of March 2, as late as half-past three or four o'clock. After supper on March 2, he hired a team and drove out into the country, starting about seven or eight o'clock. The liveryman, who drove the team, swears that, before they started, the message by telephone had come from Melvin. Appellant did not return to Roberts until the afternoon of March 3 after appellee and Iehl had been to Roberts and had left and returned to Melvin. Appellant states in his testimony in substance that, if the money had been brought to Roberts before two or three o'clock in the afternoon of March 2, he would have received it. If he was willing to receive the money on March 2, he cannot very well claim that the failure to pay it on March 1 entitled him to declare a forfeiture. He evidently did not expect to insist upon a literal and technical payment on March 1 as a justification of his alleged forfeiture of the contract. After the contract was made, and before March 1, he authorized Colteaux, who had negotiated the sale for him, to offer appellee $100.00 for his bargain, or in other words for a surrender of his contract. Without going further into details, we are satisfied from the proofs that appellant did not desire to carry out his contract of sale, and sought to evade its performance.

This being so, a court of equity will interfere to relieve the appellee. While it is true that a court of equity has no more right than a court of law to dispense with an express stipulation of parties in regard to time in contracts of this nature, yet, when the vendee has failed to make payment of any part of the purchase money at the stipulated time, a court of equity will interfere in his behalf if any fraud, accident or mistake has intervened. Relief in such cases from a strict, technical performance of the contract at the time stipulated will be granted if, by reason of mistake, or for any other cause falling within its legitimate province, a court of equity can see that essential justice demands the exercise of its jurisdiction.

(*Heckard* v. *Sayre*, 34 Ill. 142; 5 Wait's Actions and Defenses, p. 808; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *Potter* v. *Tuthill*, 22 Conn. 512). The main question in a case of specific performance is, whether the complainant has made a conscientious effort on his part to comply honestly with the contract. (*Kimball* v. *Tooke*, 70 Ill. 553; *Monson* v. *Bragdon*, 159 id. 61). It is impossible to escape the conclusion in this case that, if the verbal agreement testified to by appellee, was not made between himself and the appellant, there was a mistake or misunderstanding on the part of appellee as to the place where he was to pay this money, and inasmuch as, in addition to this, there was an effort on the part of appellant to evade the performance of his part of the contract, a court of equity is authorized to decree a specific performance thereof.

There is one feature, however, of the decree, entered by the court below, which we cannot but regard as erroneous. The decree provides that, if the appellant shall deliver a deed, in the execution of which his wife shall join with him, to the master, then the master is to pay to appellant the full amount of money required to be deposited with him by the appellee. But the decree also provides that, if appellant shall deliver a deed signed by himself alone without the execution thereof by his wife, so as to release her dower, then the master shall pay over to the appellant all of the money so deposited, except the sum of $1000.00, and that said sum of $1000.00 shall be retained by the master until the value of the dower interest of the wife of appellant can be ascertained. As the appellant is still alive, his wife's dower is as yet inchoate. In *Humphrey* v. *Clement*, 44 Ill. 299, which was a proceeding to compel the specific performance of a contract for the sale and conveyance of land, the court decreed a conveyance upon payment by the purchaser of $880.00, the amount due on the contract, and also decreed that, in case the wife of the defendant should refuse to join in the deed, the purchaser might re-

tain $250.00 out of the purchase money; and it was there held, that this provision in the decree, authorizing the purchaser to retain $250.00 out of the purchase money, as an indemnity against the contingent right of dower, was erroneous, there being no grounds upon which to base such judicial action. (See also *Sloan* v. *Williams*, 138 Ill. 43). Under the doctrine laid down in *Humphrey* v. *Clement*, *supra*, the retention of the $1000.00 out of the purchase money is unauthorized. We do not regard the case of *Humphrey* v. *Clement*, *supra*, as overruled by the case of *McCord* v. *Massey*, 155 Ill. 123. In the latter case, the appellee therein brought suit to recover the residue of the purchase money of certain premises, and the appellants there sought to set off against his demand an amount, which appellants had been obliged to pay to remove an inchoate right of dower; and it was there held that the damages, sustained by the covenantee through a breach of covenant against encumbrances, was not established by proof of the amount paid to discharge such inchoate right of dower.

The vendee, in cases like the one at bar, must take his deed without the execution thereof by the wife, and rely upon its covenants. If a purchaser of land desires to protect himself against the dower of the vendor's wife, he should provide against it in his contract.

The decree of the circuit court is affirmed so far as it awards to appellee a specific performance of the contract, but is reversed so far as it authorizes a part of the purchase money to be held back until the value of the dower interest of appellant's wife can be ascertained; and the cause is remanded to the court below with directions to change and modify its decree in accordance with the views herein expressed.

*Reversed in part and remanded.*