LOUIS S. COHEN *et al.* Appellants, *vs.* JOSEPH SEGAL *et al.* Appellees.

*Opinion filed December 21, 1911—Rehearing denied Feb. 8, 1912.*

1. SPECIFIC PERFORMANCE—*party not required to do a useless thing before he can maintain bill.* Where it is shown by the bill for specific performance of a contract to exchange lands that the defendants unconditionally refused to perform and that complainants were willing and anxious to perform the contract at all times from its date to the filing of the bill, the refusal of the defendants to perform excuses the failure of the complainants to make a tender of the abstract or guaranty policy to the defendants, as the law does not require a party to do a useless thing before he can maintain a bill for specific performance.

2. SAME—*when delay in filing bill does not defeat right to relief.* A delay of nearly a year in filing a bill for specific performance of a contract for the exchange of lands does not deprive the complainants of the right to relief, even though defendants refused to perform a few days after the contract was executed, where the complainants were ready to perform and were repeatedly asking the defendants to perform without litigation, and where no material change in the value of the properties has occurred, no rights of third persons have intervened and no change in the position of the defendants has been caused by the delay.

3. SAME—*when fact that complainants recorded contract does not bar right to relief.* The fact that the complainants, after the defendants refused to perform a contract, which was held by a third party in escrow, recorded the contract without the consent of the defendants, is not such inequitable conduct as bars them from equitable relief by way of specific performance, where the contract does not provide, in terms, that it shall not be recorded.

4. SAME—*fact that husband or wife does not sign contract does not render it unenforceable.* The fact that the husband or wife of the owner of the fee does not sign a contract made by such owner for the sale of the land, to be consummated at some future date, does not render the contract unenforceable for the want of mutuality, as the inchoate right of dower is, at most, a mere encumbrance, which may be removed by the owner of the fee by tendering a deed in which the husband or wife joins and releases such right. (*Gage* v. *Cummings,* 209 Ill. 120, distinguished.)

COOKE, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. W. F. COOPER, Judge, presiding.

This is an appeal from the decree of the superior court of Cook county sustaining a demurrer to and dismissing for want of equity an amended bill filed by the appellants, Louis S. Cohen and Anna Krasa, praying for specific performance of a written contract for the exchange of lands, entered into by them with the appellees, Joseph Segal and Rose Segal.

It appears from said amended bill that on February 21, 1910, appellants, Louis S. Cohen and Anna Krasa, were the owners in fee of certain premises located at the southwest corner of Halsted street and West Fourteenth place, in the city of Chicago, and the appellee Joseph Segal was the owner in fee of certain premises known as Nos. 618 and 620 South Hermitage avenue, in said city of Chicago; that on the said date said parties entered into a written contract, by which appellants agreed to convey to appellees, by general warranty deed, including all estate of homestead and all rights of dower therein, at a consideration of $44,-000, the Halsted street property, subject to certain leases, taxes, assessments and an encumbrance of $17,000, and in exchange said appellees agreed to convey to appellants by general warranty deed, including all estate of homestead and all rights of dower therein, at a consideration of $21,000, the Hermitage avenue property, subject to certain

leases, taxes, assessments, etc., and to an encumbrance of $9000, and to pay at the date of exchange of deeds the sum of $1000 cash and $14,000 in monthly installments of $100 each until paid, to be secured by notes and a trust deed on the Halsted street property; that each was to furnish the other, within a reasonable time, a complete merchantable abstract of title or copy thereof, or a merchantable title guaranty policy, showing a good and sufficient title in the respective parties, and ten days were to be allowed to examine the title and sixty days to cure defects therein; that all notices required to be given were in all cases to be construed as notices in writing; that interest and insurance premiums were to be adjusted as of the date of delivery of deeds, and all deeds to be passed and the negotiation closed at the office of John C. Krasa within five days after the titles had been found good; that time was declared to be of the essence of the contract, and the contract was to be held by the Chicago Title and Trust Company for the mutual benefit of the parties concerned; that the contract was signed by Anna Krasa, by John C. Krasa, her agent, and by Louis S. Cohen, Joseph Segal and Rose Segal, his wife. It further appears from said amended bill that within two or three days after the execution of said contract, on February 21, 1910, appellee Joseph Segal notified the appellants that he would not carry out said contract, and the appellants immediately informed said Segal they would hold him to the contract and that they intended to proceed with the same and requested him to proceed with the execution of the contract, and in like manner requested his wife, Rose Segal, to proceed with said contract, but that said Joseph Segal and Rose Segal both stated that they would have nothing further to do with the contract and would not carry out the same in any respect or deliver any abstract or policy, and that appellees at frequent intervals thereafter persisted in such refusal; that appellants stated in reply on all such occasions that they were ready to perform their

part of the contract. The bill further recites the abstract of title to the property owned by appellants was in the possession of the mortgagee, who refused to surrender it to appellants but informed appellants that the attorney of the appellees could examine such abstract at the mortgagee's office; that appellants communicated this information to appellees, and also informed them that they would furnish a new abstract or policy within twenty days after the execution of said contract; that appellees stated they did not care what appellants did, and would not continue with the execution of said contract. The bill further recites that appellants hoped and believed appellees would reconsider their repudiation of the contract, and filed the contract for record in the recorder's office of Cook county on February 24, 1910, and endeavored to persuade the appellees to proceed with the contract without appellants being compelled to resort to litigation; that on September 26, 1910, appellants tendered a warranty deed of the premises owned by them to appellee Joseph Segal, which deed was signed and acknowledged by appellants and by their respective spouses, and also tendered a guaranty policy of their premises showing their title on August 31, 1910; that on November 4, 1910, the same tender was made to Rose Segal, Joseph's wife; that appellees again refused to accept the deed or policy or to carry out the contract; that appellants have at all times been ready, willing and able to carry out the contract; that the tender of their deed and policy was delayed because of the refusal of the appellees to perform and the endeavors of appellants to cause appellees to proceed to the execution of the contract without litigation.

To the amended bill appellees interposed a demurrer for the following causes: First, the amended bill did not state a case which would entitle appellants to equitable relief; second, the contract set out in the amended bill is void as a contract for want of mutuality of obligation and remedy and cannot be specifically enforced; third, the conduct of

the appellants has not been correct and appellants did not come into equity with clean hands; fourth, the appellants did not perform the parts of the contract to be performed by them; fifth, the delay of the appellants in prosecuting this cause constituted *laches* and amounted to abandonment of their right to specific performance.

VINCENT D. WYMAN, and OTTO W. JURGENS, for appellants:

The bill shows the unconditional refusal of the defendants to perform. This constituted a sufficient excuse for the failure of complainants to make any tender of an abstract or guaranty policy or of a deed. After such refusal they were not required to do anything further under the contract. Equity will not require the performance of an idle act. *Scott* v. *Beach,* 172 Ill. 273; *Bucklen* v. *Hasterlik,* 155 id. 423; *Lyman* v. *Gedney,* 114 id. 391.

The defendants having declined to perform their part of the contract, all further performance by complainants was unnecessary. The defendants are estopped from setting up as a defense to the bill that time was of the essence of the contract. *Lyman* v. *Gedney,* 114 Ill. 391.

The rule as to mutuality of remedy *ab initio* has application only to cases where the vendor is without that which he agreed to convey, or any interest in it. It has no application to a case where the vendor has title to some extent but it is defective or encumbered in some particular. *Blanton* v. *Warehouse Co.* 120 Fed. Rep. 318.

If the vendee, at the time of the contract, knew it would take time to perfect the title or the consent of some other party to make the title good, the original want of mutuality of remedy cannot be interposed as a defense. 26 Am. & Eng. Ency. of Law, (2d ed.) 115; *Gibson* v. *Brown,* 214 Ill. 335.

The modern doctrine is, that if, at the time when by the terms of the contract the vendor is required to perform,

he is in a position to be compelled to perform, the objection of original want of mutuality cannot be urged and the contract will be specifically enforced. In other words, the mutuality of remedy need not exist before the time the court is asked to decree the performance of the contract. *Construction Co.* v. *Kuper,* 90 Md. 540; *Brown* v. *Munger,* 42 Minn. 486; *Dressel* v. *Jordan,* 104 Mass. 414; *Logan* v. *Bull,* 78 Ky. 617; *Johnson* v. *Higgins,* 77 Neb. 37; *Day* v. *Mountin,* 137 Fed. Rep. 763; *Smith* v. *Gansler,* 83 Ky. 371; *Krah* v. *Wassmer,* 71 Atl. Rep. 404; *Isaacs* v. *Skranker,* 95 Mo. 322; *Reeves* v. *Dickey,* 10 Gratt. 138; 26 Am. & Eng. Ency. of Law, (2d ed.) 115; 36 Cyc. 627, 628; Waterman on Specific Performance, sec. 199; *Richards* v. *Green,* 23 N. J. Eq. 536; Pomeroy on Specific Performance, sec. 166, note on p. 237; *Gibson* v. *Brown,* 214 Ill. 335.

Where the consent of a third person is required to the complete performance of the contract, courts have in some cases presumed such consent might be obtained until the contrary was shown. *Lyman* v. *Gedney,* 114 Ill. 388; *Jacobson* v. *Rechnitz,* 46 Misc. (N. Y.) 135; *Arnold* v. *Hull,* 7 Grant's Ch. 47.

It is no objection to the specific performance of the contract that the consent of a third person is necessary to its performance, where it is shown that he does or will consent. 36 Cyc. 573, 627.

A delay which neither evidences an abandonment of a right nor operates to the prejudice of the other party is not a defense to action of specific performance. 36 Cyc. 730.

Where the elements, conditions and incidents are such as equity deems essential, it is as much a matter of course for a court of equity to decree specific performance of a contract as it is for a court of law to allow damages for its breach. *Day* v. *Improvement Co.* 153 Ill. 293; *McClure* v. *Otrich,* 118 id. 320; *Railroad Co.* v. *Brubaker,* 217 id. 462; *Fowler* v. *Fowler,* 204 id. 82.

BERTRAM J. CAHN, for appellees:

It is not sufficient, in a bill for specific performance, to show the adverse party in default, but the party complaining must show he is not liable to the same imputation. *Short v. Kieffer,* 142 Ill. 266; *Bates v. Wheeler,* 1 Scam. 54; *Doyle v. Teas,* 4 id. 202.

The fact that appellees may have refused to carry out the contract does not relieve appellants from the performance of the acts required of them by the contract, when such acts are necessary to place them in a position to file a bill for specific performance. *Brink v. Steadman,* 70 Ill. 241; *Bothwell v. Schmidt,* 248 id. 586.

A court of equity will not compel the spouse of a vendor of land to convey his or her right of dower therein when such spouse does not join in the contract for such conveyance. *Humphrey v. Clement,* 44 Ill. 299; *Mathison v. Wilcox,* 87 id. 51; *Mix v. Baldwin,* 156 id. 313; *Cowan v. Kane,* 211 id. 572; *Casstevens v. Casstevens,* 227 id. 547; *Plum v. Mitchell,* 26 S. W. Rep. 391; *Schoonmaker v. Bonnie,* 23 N. E. Rep. 1106; *Barber v. Hickey,* 24 L. R. A. 736.

A vendor knows, when he enters into a contract to sell real estate in which his spouse does not join, that he takes the chance, as well as the vendee, that the spouse may not join in the deed, and neither can compel specific performance in case of the refusal to join. *McCoy v. Niblich,* 70 Atl. Rep. 577.

A contract, to be specifically enforced by a court of equity, must be mutual at the time it was entered into, so that it might at that time have been enforceable by either of the parties against the other. Mutuality of remedy must exist at the inception of the contract. Fry on Specific Performance, sec. 286; 2 Beach on Contracts, sec. 885; Pomeroy on Contracts, (2d ed.) sec. 166; *Baird v. Linthicum,* 1 Md. Ch. 345; *Duvall v. Myers,* 2 id. 401; *Tryce v. Dit-*

*tus,* 199 Ill. 189; *Luse* v. *Deitz,* 46 Iowa, 205; *Gibson* v. *Brown,* 214 Ill. 331; *Cowan* v. *Curran,* 216 id. 598; *Norris* v. *Fox,* 45 Fed. Rep. 406; *TenEyck* v. *Manning,* 27 Atl. Rep. 900; *Gage* v. *Cummings,* 209 Ill. 120; *Kuhn* v. *Eppstein,* 219 id. 154; *Sayer* v. *Humphrey,* 216 id. 431; *Smith* v. *Hunter,* 241 id. 514.

Where one party to a contract gives notice to the other that he will not perform the contract and expressly repudiates it, a comparatively brief delay in asserting his right to enforce the contract will be considered as an acquiescence in the notice and abandonment of the right to specific performance. Fry on Specific Performance, sec. 1079; Pomeroy on Specific Performance, 416, 425; 26 Am. & Eng. Ency. of Law, (2d ed.) sec. 9; 36 Cyc. 728; *McDermid* v. *McGregor,* 21 Minn. 111; *Banks* v. *Burnam,* 61 Mo. 76; *Watson* v. *Reid,* 1 R. & M. 237; *Heapy* v. *Hill,* 2 S. & S. 30; *Guest* v. *Humphrey,* 5 Ves. Jr. 818; *Ketcham* v. *Owen,* 36 Atl. Rep. 1095; *Walker* v. *Jeffreys,* 1 Hare, 341; *Colby* v. *Gadsden,* 34 Beav. 418.

The party asking specific performance of a contract must show that his conduct has been fair. He who seeks equity must do equity. *Mitchell* v. *King,* 77 Ill. 462; *Doyle* v. *Teas,* 4 Scam. 202; *Winslow* v. *Noble,* 101 Ill. 198; *Eastman* v. *Plumer,* 46 N. H. 464.

In case a contract for the sale of land is placed in the hands of a third person to be held in escrow, it should not be placed of record without the agreement of the parties, and if it is recorded, a court of chancery can set it aside as a cloud upon the title of the owner. *Larmon* v. *Jordan,* 56 Ill. 204; *Sea* v. *Morehouse,* 79 id. 216; *Lane* v. *Lesser,* 135 id. 567; *Sugar* v. *Froehlich,* 229 id. 397.

Mr. JUSTICE HAND delivered the opinion of the court:

The first contention of the appellees in support of the judgment sustaining the demurrer to the bill filed herein is, that the bill shows that the appellants did not perform

the provisions of the contract to be performed on their part and for that reason they were not entitled to maintain their bill. It is shown by the averments of the bill that the appellees refused to perform and that the appellants were anxious, ready and willing to perform at all times from the date of the contract to the date they filed their bill, and this, we think, constitutes a sufficient excuse for the failure of appellants to make a tender of an abstract or guaranty policy to appellees. The law does not require a party to a contract to do a useless thing before he can maintain a bill for specific performance. In *Lyman* v. *Gedney*, 114 Ill. 388, it was said, on page 410: "To the objection that time was of the essence of the contract and appellee did not tender a sufficient deed within the time, it is enough to say, appellant, by previously refusing to comply with the contract, is estopped from urging that objection. * * * The law did not require appellee to go through with a form which appellant had previously apprised him would be idle and useless." In *Scott* v. *Beach*, 172 Ill. 273, on page 278: "An actual tender by the plaintiff before suit brought is unnecessary when from the acts of the defendant or from the situation of the property it would be wholly nugatory— a mere useless form. If, before or at the time of completion, the defendant has openly and avowedly refused to perform his part or declared his intention not to perform at all events, then the plaintiff need not make a tender or demand its performance before bringing suit. It is enough that he is ready and willing and offers to perform in his pleading." In *Osgood* v. *Skinner*, 211 Ill. 229, on page 234: "The law does not require a needless formality, and an actual tender is unnecessary where the seller is ready, able and willing to perform on his part and the tender would be a mere useless form. If, before or at the time of performance, the purchaser has declared his intention not to perform or refuses to do so, the seller need only prove that he was ready and willing to perform on his part."

It is next contended that by reason of the delay of the appellants in filing their bill they are barred of relief. The contract bore date of February 21, 1910, and a few days thereafter the appellees repudiated their contract. The appellants repeatedly asked them to perform up to September 26, when they tendered a deed and guaranty policy, which tender was refused. The deed and policy were again tendered on November 4, 1910, and on February 10, 1911, the bill was filed. No material change in the value of either of the properties is averred to have occurred and the rights of no third person have intervened, and there was no such delay in seeking relief as would bar a court of equity from specifically enforcing said contract. The general rule is, that a delay which neither evidences an abandonment of the contract nor operates to the prejudice of the other party is not a defense to a bill for specific performance. (36 Cyc. 730.) Here the appellants were from the outset insisting on performance, and the position of the appellees has not been changed by reason of the delay. It is undoubtedly the law that an unreasonable delay in filing a bill to specifically enforce the performance of a contract for the sale of real estate will defeat a recovery, but no case has been cited where a delay of less than one year has been held fatal to a recovery, and the surrounding circumstances of each particular case will be controlling. In *Coryell* v. *Klehm,* 157 Ill. 462, this court said, on page 473: "A court of equity applies the doctrine of *laches* in denial of relief only where, from all the circumstances, to grant the relief to which the complainant would otherwise be entitled will, presumptively, be inequitable and unjust, because of the delay. (*Stiger* v. *Bent,* 111 Ill. 328.) And a demurrer for want of equity cannot be sustained unless the court is satisfied that no discovery or proof, properly called for by or founded upon the allegations in the bill, can make the subject matter of the suit a proper case for equitable cognizance.—*Bleeker* v. *Bingham,* 3 Paige, 246."

It is further contended that the appellants committed a fraud upon the appellees by recording the contract without the consent of the appellees and that they did not come into equity with clean hands. The appellees had repudiated their contract, and it was not inequitable that appellants should cause the contract to be recorded to protect their rights as against third parties. The contract did not provide, in terms, it should not be recorded, and the appellants were not barred of equitable relief by their act in recording the contract.

It is finally urged that the contract was lacking in mutuality and for that reason it should not be specifically enforced. It is true that the contract was not signed by the wife of Cohen and the husband of Krasa, and it could not be specifically enforced against them, (*Ebert* v. *Arends,* 190 Ill. 221; *Humphrey* v. *Clement,* 44 id. 299; *Cowan* v. *Kane,* 211 id. 572;) but it was binding upon Cohen and Krasa and could be specifically enforced against them, and the wife of Cohen and the husband of Krasa made no objection to the contract being carried out but joined in executing the deed which was tendered to the Segals. The inchoate right of dower is not an estate in lands but at most is a mere encumbrance, and there is no more reason why the husband or wife should sign a contract for the sale of lands than that a mortgagee or judgment creditor should sign a contract agreeing to release his lien, if the vendor is prepared with a release of the inchoate right of dower, when he is ready to close the sale according to the terms of the contract, and if, as here, the vendor was the owner of the fee at the time the contract was made and at the appointed time tendered to the vendee his title, free of all encumbrances, including the inchoate right of dower, in accordance with the terms of his contract, the vendee can not decline to perform because the title was encumbered by an inchoate right of dower at the time the contract was executed. (*Gibson* v. *Brown,* 214 Ill. 330.) In *Mason* v.

Caldwell, 5 Gilm. 196, it was said, on page 208: "Equity may enforce the specific performance of a contract for a sale of land although the vendor has no title at the time of the sale or even at the time of filing the bill, so as he can make a good title at the time of the decree." In a leading Maryland case (Maryland Const. Co. v. Kuper, 90 Md. 540,) it was said: "While it is true that a vendor must be ready and able to convey a marketable title to a purchaser, it is not necessary that he possess such a title at the time the contract is entered into, provided he shows that he made the contract in good faith and was able to convey it when called upon by his contract to do so. The great weight of authority is that he is only required to be able to convey it by the time the decree is entered. * * * The authorities are therefore ample to establish the doctrine that the mere fact that the vendor's property is encumbered or his title is defective at the time the contract of sale is made will not prevent his enforcing the contract in equity if he has removed the encumbrance and perfected the title by the time he is required by his contract to convey it; and generally, when he has acted in good faith relief will be granted him if he is ready to furnish a clear title at the time of the decree, provided the delay has not prejudiced the purchaser and time is not of the essence of the contract." While in this case the contract states that time is the essence of the contract, it was expressly provided therein that the parties were to have sixty days in which to perfect their respective titles, clearly showing that it was the intention of the parties that there might be imperfections to be cured and encumbrances to be removed before the deal was closed, and as the dower rights of the wife and husband of the appellants had been released before the title was tendered to appellees, we have reached the conclusion that the fact that the wife and husband of the appellants did not join in the contract is no defense to this bill. The case of Gage v. Cummings, 209 Ill. 120, is not like the case

at bar, as in that case the contract was not executed by the owner of the fee, as was the case here.

We are of the opinion that it was error to sustain the demurrer to appellants' bill. The judgment of the superior · court will therefore be reversed and the cause remanded to that court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

Mr. JUSTICE COOKE, dissenting:

I disagree with the view of the majority that this case is unlike that of *Gage* v. *Cummings,* 209 Ill. 120. It is my opinion that the principle governing is the same here as it was there, and as a consequence the holding of the majority here is in direct conflict with the holding in that case. Under the holding here, instead of attempting to distinguish the two cases, the *Gage case* should have been expressly overruled.