(No. 18522.—

LOUISE KUEHNLE, Appellee, *vs.* LOUISE AUGUSTIN, Appellant.

*Opinion filed December 20, 1928.*

SAMUEL B. HILL, for appellant.

BASSLER, BIPPUS & ROSE, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellee, Louise Kuehnle, filed her bill in the superior court of Cook county against appellant, Louise Augustin, for the specific performance of a contract for the exchange of real estate. The cause was referred to a master, who made a report recommending a decree as prayed. Exceptions to the report were overruled, a decree was entered as recommended, and an appeal has been prosecuted to this court.

Appellant was the owner of a frame building containing two flats, with a frame garage, on Wolfram street, and three vacant lots on North Fairfield avenue, in Chicago, subject to a mortgage of $1500 on the flat and a like mortgage on the three lots. Appellee was the owner of property on Eastwood avenue, in Chicago, consisting of a two-story brick building with two five-room flats, with sun parlors, basement, hot water heat and a garage. There were two mortgages totaling $8000 on the property. On July 7, 1925, a contract in writing was entered into between the parties for the exchange of these properties. Each conveyance was to be by warranty deed and was to convey homestead and dower. Appellee was to convey subject to existing leases, general taxes for 1924, unpaid special assessments, one trust deed for $6000, another for $3500, on which $1500 had been paid, and special assessments of $162.65. Appellant was to convey subject to general taxes for 1924, an encumbrance of $1500, and special assessments up to $300. Appellee was to pay appellant $3000 in cash at the time the deeds were exchanged. Each party was to furnish the other, within a reasonable time, an abstract of title. The contract was executed on the evening of July 7, 1925, at the real estate office of Gustave A. Kuehnle & Son, in Chicago, in the presence of Gustave and Walter Kuehnle, who were the husband and son, respectively, of appellee. Fanny C. Miller, who was a saleswoman in the employ of Kuehnle & Son, and appellant, were also present. The contract was signed by appellant, and she executed a note for $500, payable to Kuehnle & Son, which was to be held as a forfeit in case of default. The contract was left with Kuehnle & Son to be signed by appellee, who was to execute a note for a like amount as a guaranty of performance. The evidence does not show when the contract was signed by appellee, but the contract recites that it was executed July 7, 1925. After the contract was signed by appellant she and Miss Miller left the office, and appellant claims that she had a conversation with Miss

Miller relative to the sale of the property which she was to receive from appellee and which had been priced to her at $18,500. She claims she was informed by Miss Miller that it could be sold on a quick sale for $17,000, whereupon appellant told Miss Miller she would not proceed further with the trade. A day or two later the son of appellee asked appellant for her abstract. She informed him she had changed her mind about making the trade and would not proceed further. Shortly thereafter this bill was filed.

It is contended by appellant that the contract cannot be specifically enforced because it is lacking in mutuality; that the husband of appellee had a dower interest in the property; that he did not sign the contract; that appellant could not have specifically enforced it and compelled the husband of appellee to convey his dower, therefore appellee cannot enforce it against appellant.

The general rule is that a contract will not be specifically enforced unless it is mutual,—that is, unless it is of such a nature that it may be enforced by either party against the other. (*Barker* v. *Hauberg,* 325 Ill. 538; *Rost* v. *Kremin,* 308 id. 79.) In *Cohen* v. *Segal,* 253 Ill. 34, this court upheld the specific performance of a contract for the exchange of properties between a married man and a married woman where the contract was not signed by the wife or husband of either party. It was held that the signature of a husband or wife having an inchoate right of dower was not necessary to authorize specific performance if the vendor seeking performance was able to make good title by conveyance releasing the inchoate right of dower within the time agreed upon in the contract. The court cited and quoted from *Maryland Const. Co.* v. *Kuper,* 90 Md. 540, which announced the same rule. In *Watson* v. *Doyle,* 130 Ill. 415, and *White* v. *Bates,* 234 id. 276, it was held that a contract for the sale of a homestead signed by the owner of the fee but not signed by the wife will be specifically enforced as to the excess above the value of the homestead

estate. In *Mikelaiczak* v. *Kruppa,* 254 Ill. 209, complainant filed a bill for specific performance of a contract for the exchange of real estate in which he agreed to convey by warranty deed free of homestead and dower. He was married and his wife did not join in the contract. Defendants in their answer alleged that the contract was not valid for that reason. Within the time required by the contract complainant tendered a warranty deed, in which his wife joined, releasing her homestead and dower. It was held that complainant was thereupon authorized to demand a specific performance, and upon being refused he had the right to call upon a court of equity to enforce performance.

Appellee did not tender a deed signed by her husband and did not tender performance of any of the other acts required of her by the contract, but the necessity of such a tender was waived by appellant when she notified appellee she would not proceed with the contract. (*Mishelsky* v. *Carman,* 320 Ill. 123; *Cohen* v. *Segal, supra.*) The bill alleged that appellant repudiated the contract two days after it was signed and waived the necessity of a tender of performance. The repudiation was established not only by the witnesses for appellee but it was admitted by appellant. The evidence shows that appellee's husband was at all times ready, able and willing to join in a deed releasing his homestead and dower. The decree fully protected appellant by requiring, as a condition precedent to compelling performance on her part, that appellee deliver a deed containing a release of homestead and dower. The contract was not lacking in mutuality.

Appellant insists that the court erred in entering a decree which directed the husband of appellee to join in her warranty deed, releasing his homestead and dower; that this was, in effect, the making of a new contract between the parties. The decree did not require the husband of appellee to join in the deed. It merely provided that appellee should have specific performance provided she first deliv-

ered a deed conveying her husband's title. If she could not comply there could be no specific performance. The only person who could suffer by reason of the provisions of the decree was the husband. He was not a party to the suit and has not raised this question. The appellant is in no position to raise it, and therefore there is no merit in her contention.

Appellant urges that the evidence shows that she withdrew her offer to make the contract after she signed it but before it was executed by appellee. This contention is based upon the alleged conversation between appellant and Miss Miller as they left the office where the contract was signed. Appellant testified that Miss Miller said she would sell the property which appellant was to get from appellee. Appellant inquired what price could be obtained at a quick sale, and Miss Miller replied that if appellant was willing to make a quick sale and a thoroughly good deal she could get $17,000. Appellant testified she told Miss Miller she would have to go to Kuehnle and tell him that she could not go ahead with the deal; that it would ruin her; that she might as well be swindled by the other fellow; that Miss Miller replied that she had made the other deal but appellant should keep it from Kuehnle, as she had not received any commission for the present deal and felt that she should make the entire commission on the second deal. This conversation was denied by Miss Miller. This defense was therefore based upon an alleged conversation in which two witnesses contradicted each other in positive terms. The burden was upon appellant to establish this defense by the greater weight of the evidence, which she did not do. Several days later she told the son of appellee that she would not go on with the trade because she had changed her mind. At that time she said nothing about having withdrawn from the contract before it was accepted by appellee. The withdrawal was based upon claims which are not established by the evidence.

Appellant insists that the court erred in entering a decree because the evidence failed to show that there was an exact meeting of the minds of the parties with relation to the terms of the contract, particularly with reference to the encumbrance on the vacant lots; that appellee and her representatives believed that the balance due on the mortgage on this property was $1000, whereas, in fact, it was $1500, which was known to appellant. The contract required appellant to convey these three lots free and clear of encumbrance. She was to pay this mortgage, and her other property was to be conveyed subject to the other $1500 mortgage. A misapprehension by appellee as to the amount of the encumbrance on appellant's property, which appellee was not to assume but which was to be paid by appellant at the consummation of the trade, could not become the basis for a claim that the parties did not agree upon the terms of the contract. The amount of this encumbrance was of interest only to appellant and was not a part of the subject matter of the contract.

It is contended that appellee through her representatives practiced fraud, misrepresentation and over-reaching upon appellant; that the husband of appellee put a valuation of $18,500 upon her property, and the evidence shows she paid $13,900 for it a few years prior thereto; that this transaction had covered a period of several months and the husband of appellee was endeavoring by all of the well known arts of a real estate man to further the sale; that he told appellant if she did not proceed with the deal he would have to call it off as somebody else wanted to buy the property; that he belittled and besmirched the character of the holder of the mortgage on the vacant lots by telling appellant she would lose her property if she did not pay off this indebtedness; that he urged haste in making the contract without waiting to secure the legal description of appellant's property; that he left the name of the owner of appellee's property blank until after the contract had been

signed and then filled it in by re-inserting the copy in the typewriter; that he required the execution of a note by appellee payable to herself and one by appellant payable to Kuehnle & Son, who were not parties to the contract, and yet both notes were supposed to be held for the benefit of either party to the contract. Most of these charges depend upon the evidence of appellant alone. The evidence shows that this transaction had been under consideration by appellant for about six months before the contract was signed. She had talked to Kuehnle and Miss Miller about this trade upon several occasions. She had inspected the property for which she was trading. She had ample opportunity to know just what the property consisted of and just what it was worth. As is usually the case, there is a conflict in the evidence as to the values of the properties. Appellee's property was originally priced to appellant at $18,500. It had been purchased several years before for $13,900. One witness for appellant testified that appellee's property was worth $16,500 cash or $17,000 in trade, and another witness testified it was worth $18,000. It was subject to an encumbrance of $8000, and appellee was to pay $3000 to appellant as the difference between the properties. If the lowest value placed on appellee's property is taken as the basis of the trade, appellant was getting property of the value of $11,500; if the higher values are placed thereon it is worth $12,000 or $13,000. One witness placed the value of appellant's vacant lots at $11,000 or $11,500, and other witnesses placed it at $9900, $7425, $7200 and $6600. The evidence shows that the value of appellant's flat was given as $7000, $7500 and $8000, and it was to be conveyed subject to a $1500 mortgage. The master found that the equities on each side were $13,500 and that one property was substantially equal in value to the other. The evidence as to values was merely the opinions of witnesses. Disparagement of the respective values does not amount to fraud unless the inadequacy is such as shocks the conscience and

amounts to conclusive and decisive evidence of fraud in the transaction. Inadequacy of consideration less than this is not a sufficient ground for refusing specific performance. (*Bear* v. *Fletcher,* 252 Ill. 206; *Zempel* v. *Hughes,* 235 id. 424.) When all of the evidence is considered, the inadequacy of consideration was not sufficient to set aside the decree, and the evidence does not sustain the other charges of fraud made by appellant. In each incident she was disputed by three witnesses.

Complaint is made of the amount of master's fees allowed. The total fees were $886.05. They are divided into two classes: First, for taking the evidence; and second, for determining the issues. The first item was for 482 folios of evidence at fifteen cents per folio, amounting to $72.30, a charge against appellee on which $50 had been paid. The second item was for 665 folios of evidence at fifteen cents, amounting to $84.75; twenty exhibits, $31.95, charged against appellant, on which $50 had been paid; and stenographer's fees of $157.05, making a total of $346.05 for taking the evidence. The court sustained an objection to the item of $157.05 and an additional amount of $37, making a total deduction of $194.05, leaving $152, which was allowed. No complaint is made as to the correctness of this ruling and it will not be reviewed.

For his fees in reporting the issues the master charged $540, divided as follows: $25 for obtaining and examining files and docketing the case; $90 for nine hearings and nine continuances, at $5 each; $100 for reading briefs and hearing arguments; $325 for reading pleadings and testimony, preparing findings of fact and of law, drawing report, preparing and serving notices to file objections, and other matters, being 65 hours at $5 per hour, or a total of $540. The allowance of master's fees is governed by section 20 of chapter 53 of our statutes, which provides that masters in chancery shall receive for examining questions in issue and reporting conclusions thereon such compensation as the

court may deem just. Fees cannot be allowed which are not provided by statute, and the allowance must be in strict conformity therewith. In *Herpich* v. *Williams*, 300 Ill. 540, the master made a total charge of $810, including ten continuances at $3 each; for preparing report, serving notices to file objections, six days at $30 per day, $180; for hearing argument prior to the report, the objections to the report and considering and passing on same, $105. It was held that these charges were excessive. There is no provision in the statute for the $25 allowed for obtaining and examining files and docketing cause, for the eighteen hearings and continuances at $5 each, or for the $100 for reading briefs and hearing arguments.

This leaves for consideration the $325 charged for determining the issues, covering 65 hours at $5 per hour. In *Rasch* v. *Rasch*, 278 Ill. 261, the record contained 674 pages of evidence, and it was held that $250 for five days spent in securing files, considering evidence, hearing arguments and making the report, where parts of six days were consumed in taking evidence, was excessive. In *Klekamp* v. *Klekamp*, 275 Ill. 98, the record contained 453 pages of evidence. Thirty-five dollars per diem for eight and one-half days was charged for reporting conclusions and hearing arguments and objections to the report, and this amount was held to be excessive. In *Keuper* v. *Mette*, 239 Ill. 586, a charge of $200 for five and one-half days in studying plats, hearing arguments and studying transcripts was held excessive, where the evidence was not voluminous and the questions involved were not intricate or difficult. The decree was reversed, with directions to tax the master's fees at $133.75. In *Wirzbicky* v. *Dranicki*, 235 Ill. 106, the master charged $220 for 587 pages of evidence at fifteen cents per hundred words and $200 for hearing and examining questions and issues and reporting conclusions. The last amount was not itemized. The decree was reversed, with directions to allow the $220 for taking evidence and

nothing for the conclusions, because they were not itemized. In *Manowsky* v. *Stephan*, 233 Ill. 409, $123.75 was allowed for taking the evidence and the master asked $76.25 for other fees. The last item was held to be excessive and was reduced to.$50. The evidence in this case consists of about 450 pages. It is not voluminous and there are no intricate or complicated questions of law or fact to be determined. The charge of $540 was excessive, and an allowance of $150 would be ample and sufficient for the work performed.

The decree will be affirmed in all respects except that the item of $540 charged by the master for determining the issues in the case will be reduced to $150, and the decree will be reversed and the cause remanded, with directions to modify the decree accordingly.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.
*Reversed in part and remanded, with directions.*